**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MARELLI AUTOMOTIVE LIGHTING USA LLC, *et al.*,[1] | Case No. 25-11034 (CTG) |
| Debtors. | (Jointly Administered) |
| OPMOBILITY GESTION; OPMOBILITY SE; OPMOBILITY HOLDING USA, INC.; and OPMOBILITY LIGHTING HOLDING, | |
| Plaintiffs, | Adv. Pro. No. 26-50470 (CTG) |
| v. | |
| STRATEGIC VALUE PARTNERS, LLC; MARELLI HOLDINGS CO., LTD.; MARELLI CORPORATION; MARELLI NORTH AMERICA, INC.; MARELLI HOLDING USA LLC; MARELLI TENNESSEE USA LLC; MARELLI AUTOMOTIVE LIGHTING USA LLC; and DOE DEFENDANTS 1-20, | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/Marelli.  The location of Marelli Automotive Lighting USA LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 26555 Northwestern Highway, Southfield, Michigan 48033.

**Table of Contents**

**Page**

I.    INTRODUCTION.................................................................................................1

II.   STATEMENT OF FACTS....................................................................................3

    A.    The Parties .................................................................................................3

    B.    Factual Background ...................................................................................4

    C.    OPmobility's Claims.................................................................................5

III.  LEGAL STANDARD ..........................................................................................6

IV.   ARGUMENT ......................................................................................................7

    A.    OPmobility's Improper Use of Group Pleading Does Not Satisfy Rule 8's Pleading Requirements ...................................................................8

    B.    The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted ..........................................................9

        1.    OPmobility Fails to Sufficiently Plead a Claim Under the DTSA and DUTSA ...................................................................................9

        2.    OPmobility's Tortious Interference and Aiding and Abetting Claims Are Not Cognizable Under Delaware Law .......................................................19

        3.    OPmobility Fails to Sufficiently Plead a Claim for Tortious Interference with Contract...................................................................21

        4.    OPmobility Fails to Sufficiently Plead a Claim for Aiding and Abetting Breach of Fiduciary Duty.................................................................25

V.    CONCLUSION ..................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
    581 F. Supp. 2d 654 (D. Del. 2008)....................................................................15, 16, 23, 27

*Adverio Pharma GmbH v. Alembic Pharms. Ltd.*,
    2019 WL 581618 (D. Del. Feb. 13, 2019)......................................................................7, 8

*Agilent Techs., Inc. v. Kirkland*,
    2009 WL 119865 (Del. Ch. Jan. 20, 2009).......................................................................23

*AlixPartners, LLP v. Mori*,
    2022 WL 1111404 (Del. Ch. Apr. 14, 2022) ....................................................................11

*Arunachalam v. IBM Corp.*,
    2021 WL 7209362 (D. Del. Dec. 29, 2021)........................................................................9

*ASDI, Inc. v. Beard Rsch., Inc.*,
    11 A.3d 749 (Del. 2010) .....................................................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................7

*Backer v. Palisades Growth Cap. II, L.P.*,
    246 A.3d 81 (Del. 2021) .....................................................................................................27

*Battaglia Mgmt., Inc. v. Abramowicz*,
    2024 WL 3183063 (D. Del. June 26, 2024)............................................................. *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................6, 7, 8

*Brightstar Corp. v. PCS Wireless, LLC*,
    2019 WL 3714917 (Del. Super. Ct. Aug. 7, 2019).........................................................16

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006)................................................................................................5

*Burtch v. Zachem*,
    2023 WL 6140247 (Bankr. D. Del. Sept. 19, 2023) .........................................................8

*Centrella v. Avantor, Inc.*,
    2025 WL 3555119 (Del. Super. Ct. Nov. 24, 2025).....................................................24, 25

ii

*In re Chicken Soup for the Soul Ent., Inc.*,
  2025 WL 3533003 (Bankr. D. Del. Dec. 9, 2025)........................................................18

*Com. Nat'l Ins. Servs., Inc. v. Buchler*,
  120 F. App'x 414 (3d Cir. 2004) ................................................................................23

*In re Dole Food Co. S'holder Litig.*,
  2015 WL 5052214 (Del. Ch. Aug. 27, 2015) ..............................................................28

*Dow Chem. Canada Inc. v. HRD Corp.*,
  909 F. Supp. 2d 340 (D. Del. 2012)............................................................................10

*Ethypharm S.A. Fr. V. Bentley Pharm., Inc.*,
  388 F. Supp. 2d 426 (D. Del. 2005)............................................................................19

*Fair Isaac Corp. v. Gurobi Optimization, LLC*,
  2025 WL 2636403 (D. Del. Sept. 12, 2025)...........................................................15, 17

*Focus Fin. Partners, LLC v. Holsopple*,
  250 A.3d 939 (Del. Ch. 2020).................................................................................20, 21

*Grunstein v. Silva*,
  2009 WL 4698541 (Del. Ch. Dec. 8, 2009)................................................................27

*In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.*,
  318 A.3d 306 (Del. Ch. 2024)....................................................................................27

*I-Mab Biopharma v. Inhibrx, Inc.*,
  2024 WL 5335719 (D. Del. Nov. 6, 2024) ..................................................................12

*JPMorgan Chase Bank, Nat'l Ass'n v. Argus Info. & Advisory Servs. Inc.*,
  765 F. Supp. 3d 367 (D. Del. 2025)......................................................................10, 11

*Labyrinth, Inc. v. Urich*,
  2024 WL 295996 (Del. Ch. Jan. 26, 2024)......................................................... *passim*

*Lithero, LLC v. AstraZeneca Pharmaceuticals LP*,
  2020 WL 4699041 (D. Del. Aug. 13, 2020) ................................................................13

*Luminati Networks Ltd. v. BIScience Inc.*,
  2019 WL 2084426 (E.D. Tex. May 13, 2019)..............................................................11

*Mallet & Co. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) .................................................................................12, 14

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) .......................................................................................28

*Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*,
  2021 WL 4350591 (D. Del. Sept. 24, 2021) .................................................................9

*Montway LLC v. Navi Transp. Servs. LLC*,
  826 F. Supp. 3d 532 (D. Del. 2026) ...............................................................21, 22

*Nelson v. Fleet Nat'l Bank*,
  949 F. Supp. 254 (D. Del. 1996) .......................................................................23

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ..........................................................................26, 27

*New Enter. Assocs. 14, L.P. v. Rich*,
  292 A.3d 112 (Del. Ch. 2023) ..........................................................................24

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) .............................................................................12

*Palm Bay Imports, Inc. v. Miron*,
  55 F. App'x 52 (3d Cir. 2003) ..........................................................................22

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ...........................................................................6, 7

*ProV Int'l Inc. v. Lucca*,
  2019 WL 5578880 (M.D. Fla. Oct. 29, 2019) .....................................................11

*Savor, Inc. v. FMR Corp.*,
  2004 WL 1965869 (Del. Super. Ct. July 15, 2004) .............................................22

*Signant Health Holding Corp. v. Definium Therapeutics, Inc.*,
  2026 WL 1893641 (D. Del. July 1, 2026) ...............................................12, 13, 14

*Stoltz v. Del. Real Est. Comm'n*,
  473 A.2d 1258 (Del. Super. 1984) .....................................................................25

*Tatum v. Fairstead Affordable LLC*,
  347 A.3d 1221 (Del. Ch. 2025) ........................................................................22

*In re Walt Disney Co. Derivative Litig.*,
  907 A.2d 693 (Del. Ch. 2005) ..........................................................................26

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*,
  49 A.3d 1168 (Del. 2012) ................................................................................24

*You Map, Inc. v. Snap Inc.*,
  2021 WL 106498 (D. Del. Jan. 12, 2021) ....................................................14, 20

*Young Women's Christian Ass'n of Rochester & Monroe Cnty. v. Hatteras Funds,*
   *LP,*
   356 A.3d 459 (Del. Ch. 2026).........................................................................................25

**Statutes**

6 Del. C. § 2001(2) ........................................................................................................19

6 Del. C. § 2007(a).........................................................................................................19

18 U.S.C. § 1836............................................................................................................17

18 U.S.C. § 1837(1) ........................................................................................................10

18 U.S.C. § 1837(2) ........................................................................................................10

18 U.S.C. § 1839(5) ........................................................................................................19

**Rules**

Fed. R. Civ. P. 8(a)(2)..................................................................................................6, 8

Fed R. Civ. P. 12(b)(6)....................................................................................................7

## I.   INTRODUCTION

OPmobility's[2] Complaint fails to meet the basic pleading standards required to survive a motion to dismiss.  OPmobility alleges that Defendants misappropriated trade secrets, tortiously interfered with OPmobility's employment contract with Laurent Favre, and aided and abetted Mr. Favre's breach of fiduciary obligations.  But the Complaint is devoid of well-pled factual allegations to support these claims.  It does not identify the purported trade secrets at issue with sufficient detail.  It says nothing about how Defendants supposedly used or disclosed such trade secrets.  And it does not allege any actual breach of Mr. Favre's confidentiality obligations, let alone any wrongful or improper conduct by Defendants causing the breach.  Stripped of its conclusory accusations, the Complaint reveals a straightforward story: a high-profile executive left OPmobility of his own volition and was later recruited to lead another automotive business through legitimate business channels.  OPmobility may be unhappy with that outcome, but there is nothing about it that is actionable, and OPmobility should not be permitted to pursue meritless claims against Defendants.

Each of OPmobility's four claims should be dismissed as legally and factually insufficient.

*First*, the trade secret claims under the federal Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.) (the "DTSA") and the Delaware Uniform Trade Secrets Act (6 Del. C. § 2001 et seq.) (the "DUTSA") fail as a matter of law.  The Complaint identifies the purported trade secrets only through generic categories (e.g., "customer information" and "corporate strategy").  The Complaint also contains no allegations of actual misappropriation by Defendants or by Mr. Favre, as it contains no well-pleaded allegations specifying how the purported trade secrets were improperly acquired, used, or disclosed.  And the Complaint alleges no acts of misappropriation

---

[2]        "OPmobility" refers collectively to the Plaintiffs in this Adversary Proceeding.

in the United States or in Delaware, as required for extraterritorial application as to the Japanese defendants under the DTSA and as to all defendants under the DUTSA. The Complaint's trade secret allegations boil down to Mr. Favre's former access to OPmobility's confidential information and a post-employment announcement of his plans to work with the lenders of another automotive business. This is not enough.

*Second*, OPmobility's tortious interference and aiding and abetting breach of fiduciary duty claims are not cognizable under Delaware law. The Complaint does not allege any acts in Delaware, and Delaware tort law does not provide a cause of action for conduct occurring entirely in other jurisdictions. In addition, the breach of fiduciary duty claim and the tortious interference claim (to the extent such claims rely on a breach of Mr. Favre's confidentiality obligations) are preempted by the DUTSA because these claims arise from the same factual allegations underlying OPmobility's DUTSA claim.

*Third*, the tortious interference and aiding and abetting claims are equally devoid of well-pleaded factual allegations. The Complaint fails to allege any actual breach of Mr. Favre's confidentiality obligations underlying both claims, or any continuing fiduciary duty of Mr. Favre to OPmobility following his departure from OPmobility, and further fails to identify any wrongful or improper conduct by any Defendant causing or aiding in the purported breach.

*Fourth*, compounding these deficiencies, the Complaint impermissibly lumps seven distinct entities together as "Defendants" or "Marelli" (and even lumps SVP together with Marelli even though they are not affiliated entities) without specifying which Defendant is responsible for what alleged conduct. This indiscriminate use of group pleading fails to satisfy Rule 8's notice pleading requirements and makes it impossible to discern which Defendants allegedly did what, where, and when.

2

OPmobility's Complaint does not state any plausible claim for relief. Rather, it is a fishing expedition initiated in hopes that discovery will somehow unearth evidence of wrongdoing that the Complaint itself cannot plausibly allege. The Court should dismiss the Complaint in its entirety.

## II.    STATEMENT OF FACTS

### A.    The Parties

This Adversary Proceeding arises from a prior employment relationship between non-party Laurent Favre and Plaintiff OPmobility SE. OPmobility SE is a European company with its registered and administrative offices located in France. Compl. ¶ 29. The three remaining Plaintiffs comprise two additional French entities (OPmobility Gestion and OPmobility Lighting Holding), and one U.S. affiliate (OPmobility Holding USA, Inc., a corporation registered in Delaware and headquartered in Michigan). *Id.* ¶¶ 30-32.

The Defendants comprise a mix of foreign and domestic entities. Defendants Marelli Holdings Co., Ltd. and Marelli Corporation (the "Japanese Marelli Defendants") are Japanese stock corporations. *Id.* ¶¶ 33-34. Defendant Marelli North America, Inc. is a Tennessee corporation with its principal place of business in Tennessee; Defendant Marelli Tennessee USA LLC is a Michigan limited liability company with its principal place of business in Tennessee; Defendant Marelli Holding USA LLC is a Michigan limited liability company with its principal place of business in Michigan; and Defendant Marelli Automotive Lighting USA LLC is a Delaware limited liability company with its principal place of business in Michigan. *Id.* ¶¶ 35-38. Defendant Strategic Value Partners LLC ("SVP") is a Delaware limited liability company with its

3

principal place of business in Connecticut. *Id.* ¶ 39. SVP is a member of a group of Marelli lenders (the "Ad Hoc Group"). *Id.* ¶ 1.[3]

### B.   Factual Background

Mr. Favre is a citizen of France and the former Chief Executive Officer of OPmobility SE, which is OPmobility's global parent operating out of France. *Id.* ¶¶ 2, 14. Mr. Favre's employment with OPmobility was subject to a French-language contract that contained confidentiality and non-compete provisions and is governed by French law. *Id.* ¶¶ 5, 54 n.3., 55-58.

Mr. Favre's employment with OPmobility ended on November 6, 2025. *Id.* ¶ 60. OPmobility alleges that after Mr. Favre's departure from OPmobility, SVP approached Mr. Favre to explore the possibility of hiring him as CEO of Marelli and that Mr. Favre "expressed interest in this opportunity." *Id.* ¶ 112. About four months after Mr. Favre left OPmobility, an SVP employee living in the United Kingdom contacted OPmobility's executive team in France about the possibility of Marelli hiring Mr. Favre as CEO, offering to travel to Paris to discuss the potential hiring of Mr. Favre with OPmobility in person. *Id.* ¶¶ 4, 97-99. OPmobility subsequently objected to Mr. Favre's possible employment on the basis of Mr. Favre's alleged confidentiality and non-compete obligations, and OPmobility threatened legal action against Mr. Favre, Marelli, and SVP. *Id.* ¶¶ 99, 107. Defendants communicated their belief that the non-compete was inapplicable and confirmed in writing to OPmobility that Mr. Favre had not disclosed any of OPmobility's confidential information. *Id.* ¶¶ 101, 104. In April of 2026, Marelli and the Ad Hoc Group issued press releases from Japan and Connecticut respectively announcing the Ad Hoc

---

[3]     There have been no allegations in the Complaint that either the Marelli Defendants or SVP have a contractual relationship with OPmobility giving rise to non-compete or confidentiality obligations.

Group's intention "to appoint Laurent Favre as the company's future Chief Executive Officer," who would work "closely with the Ad Hoc Group" and take over the position of Marelli CEO "in due course."[4]

Around the same time, in response to OPmobility's threatened litigation, Mr. Favre filed a complaint in the French Nanterre Labor Court (the "French Court") against OPmobility SE and OPmobility Gestion seeking, among other things, an order declaring that the non-competition provisions of the employment agreement were inapplicable and/or unenforceable as to Marelli. *See* Dkt. 28 (Defendants' Cross-Mot. to Stay) at 2-3.

### C.     OPmobility's Claims

On June 16, 2026, Plaintiffs brought this adversary action against Defendants alleging misappropriation of trade secrets in violation of the DTSA and the DUTSA, tortious interference with the confidentiality and non-competition provisions of Mr. Favre's employment contract, and aiding and abetting breach of fiduciary duty based on Mr. Favre's alleged disclosure and use of OPmobility confidential information.  Compl. ¶¶ 1-3.  Defendants do not include Mr. Favre as a party to this action or bring any claims against Mr. Favre.

OPmobility alleges that Mr. Favre's prior role as CEO gave him access to confidential information, which the complaint describes as falling into the categories of "corporate strategy," "customer information," "merger, acquisition, and joint venture information," and "pricing

---

[4]     *Se*e Press Release, Ad Hoc Group of Marelli Lenders Announces Plan to Appoint Laurent Favre as Future Company CEO, PR Newswire (Apr. 2026), https://www.prnewswire.com/news-releases/ad-hoc-group-of-marelli-lenders-announces-plan-to-appoint-laurent-favre-as-future-company-ceo-302740664.html; Press Release, Marelli Announces Leadership Appointments, Marelli (Apr. 2026), https://www.marelli.com/en/news/marelli-announces-leadership-appointments.html.  These documents are incorporated by reference in the Complaint (¶¶ 99, 107) and are properly subject to judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

strategy and structure." *Id.* ¶¶ 2, 71–75. OPmobility further alleges that Mr. Favre has held himself out as working on Marelli's behalf by meeting with current and potential customers of Marelli, engaging with shareholders, and visiting Marelli plants in Italy. *Id.* ¶¶ 22, 117. Based on these activities, OPmobility alleges that Mr. Favre *must have* disclosed its trade secrets to Defendants, and that Defendants must have used this information to inform Marelli's strategic planning and compete with OPmobility. *Id.* ¶¶ 122, 128. However, there are no specific allegations in the Complaint regarding what trade secrets were disclosed or how Defendants allegedly acquired, used, or disclosed those trade secrets. Separately, OPmobility alleges that even absent any actual disclosure, Mr. Favre cannot work for Marelli "without inevitably calling upon and disclosing OPmobility's trade secrets" by virtue of his prior knowledge and the competitive overlap between the companies. *Id.* ¶¶ 23, 118, 135.

Finally, OPmobility asserts claims for tortious interference and aiding and abetting breach of fiduciary duty based on the same set of alleged facts. OPmobility alleges that Defendants' recruitment of Mr. Favre was a "significant factor" in causing him to breach his confidentiality and non-compete obligations. *Id.* ¶¶ 103, 146. OPmobility further alleges that Mr. Favre owed a continuing fiduciary duty to OPmobility not to use OPmobility's confidential information, and that Defendants knowingly facilitated his breach of that duty by recruiting Mr. Favre to serve as Marelli's global CEO and working closely with him. *Id.* ¶¶ 59-60, 154. These claims rest on the same premise as OPmobility's trade secret allegations: that Mr. Favre's work with the Ad Hoc Group and Marelli necessarily involves the disclosure or use of OPmobility's confidential information.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231

6

(3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*  "[A]llegations lumping multiple defendants together without providing allegations of individual conduct . . . are frequently insufficient to satisfy the notice pleading standard." *Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility requires that there be sufficient factual allegations from which "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[L]abels and conclusions, and a formulaic recitation of the elements" of claims will not suffice. *Twombly*, 550 U.S. at 555.  A court must take all of the well-pled factual allegations in the complaint as true but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

## IV.   ARGUMENT

Each of OPmobility's claims fails as a matter of law and should be dismissed. As a threshold matter, the Complaint fails to satisfy Rule 8's notice pleading requirements because it impermissibly lumps all Defendants together without specifying which Defendant is responsible for what conduct.  On the merits, OPmobility's trade secret claims fail because the Complaint does not identify its trade secrets with sufficient particularity, does not allege any acts of misappropriation, and does not allege relevant conduct in the United States or Delaware to support extraterritorial application of the DTSA (over foreign Defendants) and DUTSA (over all Defendants).  OPmobility's common law claims for tortious interference and aiding and abetting breach of fiduciary duty are preempted by DUTSA and not cognizable under Delaware law because they lack any meaningful connection to the state.  In any event, these two claims also fail

7

because they are devoid of well-pleaded allegations establishing any actual breach of Mr. Favre's confidentiality obligations, or any wrongful conduct by Defendants in causing or aiding any purported breach.

### A. OPmobility's Improper Use of Group Pleading Does Not Satisfy Rule 8's Pleading Requirements

The Complaint fails to satisfy Rule 8's pleading requirements because it fails to differentiate among the seven Defendants, instead impermissibly lumping them together throughout. An adequately pleaded complaint must provide a short and plain statement of the claim supported by sufficient factual allegations to permit the court to reasonably infer that the defendant is liable for the alleged misconduct. *See Twombly*, 550 U.S. at 557–58 (citing Fed. R. Civ. P. 8(a)(2)). When defendants are separate legal entities, courts assess whether the pleading states a facially plausible claim as to *each individual defendant*, rather than against the defendants collectively. This Court has consistently held that a complaint is inadequate when it lumps multiple defendants together without specifying which defendant is responsible for what conduct. *See, e.g., Adverio Pharma*, 2019 WL 581618, at *6 (explaining "allegations lumping multiple defendants together without providing allegations of individual conduct are frequently . . . insufficient to satisfy the notice pleading standard"); *Burtch v. Zachem*, 2023 WL 6140247, at *3 (Bankr. D. Del. Sept. 19, 2023) ("[E]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants.").

Here, the Complaint improperly lumps all Defendants together as simply "Defendants" (or the seven Marelli Defendants together as "Marelli"), and lumps together Marelli and SVP even though they are not corporate affiliates, without specifying which defendant is responsible for which act, falling well short of Rule 8(a)'s requirement that each defendant is put on sufficient notice of the allegations against them. For example, OPmobility alleges: "Defendants have

8

accessed, threaten to access . . . OPmobility's trade secrets" (Compl. ¶ 127); "Defendants' intentional acts . . . were a significant factor in causing Mr. Favre to breach his Employment Contract" (*id.* ¶ 146); "Defendants had actual knowledge that Mr. Favre owed a fiduciary duty to OPmobility." *Id.* ¶ 153.  The Complaint does not name any specific Marelli Defendant or SVP a single time in any substantive allegation, much less allege any specific action taken by an individual Marelli Defendant or SVP.  Nor does the Complaint allege facts distinguishing the role, conduct, or knowledge of one Marelli entity from another, or Marelli from SVP.

This pleading failure deprives each Defendant of the ability to determine the specific allegations against it and deprives the Court of any basis to evaluate liability as to any individual Defendant, as Rule 8 requires.  In short, it is "impossible to discern which Defendants allegedly did what, where, or when."  *Arunachalam v. IBM Corp.*, 2021 WL 7209362, at *8 (D. Del. Dec. 29, 2021) ("[T]he Amended Complaint fails to link claims to specific defendants, and constitutes impermissible group pleading."); *see also Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, 2021 WL 4350591, at *2–4 (D. Del. Sept. 24, 2021) (holding parent-subsidiary relationship alone does not establish liability for the parent or overcome improper group pleading).

The Complaint should therefore be dismissed in its entirety, or, at a minimum, as to each Defendant not specifically tied to well-pleaded factual allegations of individual wrongdoing.

**B.     The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted**

1.     OPmobility Fails to Sufficiently Plead a Claim Under the DTSA and DUTSA

To state a claim under either DTSA or DUTSA, a plaintiff must plausibly allege the following: "(1) the existence of a trade secret, which is information with independent economic value from not being generally known or ascertainable that the owner has taken reasonable measures to keep secret; and (2) misappropriation of that trade secret, which is the knowing

improper acquisition, use, or disclosure of that trade secret." *Battaglia Mgmt., Inc. v. Abramowicz*, 2024 WL 3183063, at *3 (D. Del. June 26, 2024) (citing *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012)). Both statutes carry a presumption against extraterritoriality. To overcome this presumption, the DTSA requires, in the context of foreign defendants, that an "act in furtherance" of the misappropriation must have occurred in the United States. *See* 18 U.S.C. § 1837(2). The DUTSA imposes an even higher standard, requiring that the misappropriation occur in Delaware or "all over the country" before the statute may be applied to any foreign *or* domestic Defendant. *See JPMorgan Chase Bank, Nat'l Ass'n v. Argus Info. & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 380 (D. Del. 2025). OPmobility's trade secret claims fail on multiple grounds.

a. *DTSA and DUTSA Do Not Apply to Purely Extraterritorial Conduct*

OPmobility's trade secret claims under the DTSA (against the Japanese Marelli Defendants) and DUTSA (against all defendants) should be dismissed because the Complaint fails to allege any acts of misappropriation in the United States or in Delaware. The DTSA applies extraterritorially only where "an act in furtherance of the offense was committed in the United States" (18 U.S.C. § 1837(2)), or the defendant is "an organization organized under the laws of the United States or a State or political subdivision thereof" (18 U.S.C. § 1837(1)). The District of Delaware has held that DUTSA does not apply where a plaintiff does not allege that any misappropriation occurred in Delaware, even if all parties are Delaware corporations. *JPMorgan Chase*, 765 F. Supp. 3d at 380 ("[I]f defendants did not misappropriate [plaintiff's] trade secrets in Delaware, then the Delaware Act does not apply.").

OPmobility may not rely on allegations of generalized domestic or in-state harm. Rather, it must identify specific conduct plausibly alleging "defendants improperly used or disclosed

10

[plaintiff's] trade secrets" inside the relevant forum. *See id.* (dismissing DUTSA claim for failure to plead any misappropriation in Delaware despite allegations that all parties are incorporated in Delaware and that the trade secrets were shared with Defendants from Delaware); *Luminati Networks Ltd. v. BIScience Inc.*, 2019 WL 2084426, at *10 (E.D. Tex. May 13, 2019) ("Causing harm to [plaintiff's business] in the United States via lost customers is not enough to state a claim actionable under the DTSA.") (quotations omitted).

Here, the alleged misappropriation, if any, could only have occurred outside the United States. The Complaint alleges in relevant part that Mr. Favre—a *French* citizen residing in *France*—acquired confidential information while employed by a *French* company, participated in meetings with Marelli customers and shareholders, and made visits to Marelli plants in *Italy*. Compl. ¶¶ 22, 117. The Complaint contains no allegations suggesting that either Japanese Marelli Defendant "attempted to recruit an employee from the United States, that the defendants acquired in the United States the defendants' 'trade secrets,' or that the defendants used the trade secrets in the United States." *ProV Int'l Inc. v. Lucca*, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (dismissing DTSA claims). Nor does the Complaint contain allegations that any misappropriation of OPmobility's information occurred in Delaware, as required to invoke the Delaware statute for *any* Defendant. *See, e.g., JPMorgan Chase*, 765 F. Supp. 3d at 380-81; *AlixPartners, LLP v. Mori*, 2022 WL 1111404, at *18 (Del. Ch. Apr. 14, 2022) (where complaint alleged that "an Italian citizen living and working in Italy, misappropriated [] trade secrets by copying documents in Italy," holding that "[t]he fact that two of the Plaintiffs are Delaware entities and [Defendant] was a partner in a Delaware limited liability partnership does not overcome the presumption against DUTSA's extraterritoriality.").

11

Accordingly, OPmobility's DTSA claim against the two Japanese Marelli Defendants and its DUTSA claim against all Defendants must be dismissed for lack of extraterritorial reach.

> b.    *OPmobility Fails to Identify Its Trade Secrets with Sufficient Particularity*

OPmobility's trade secret claims fail for the separate, independent reason that it has not identified the purported trade secret claims at issue with sufficient particularity.  To plead the existence of a trade secret in a misappropriation claim brought under the DTSA or DUTSA, a plaintiff "must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021); *see also I-Mab Biopharma v. Inhibrx, Inc.*, 2024 WL 5335719, at *2 n.5 (D. Del. Nov. 6, 2024) (recognizing "[t]he DTSA and DUTSA are substantively identical.").  At a minimum, "the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 382 (3d Cir. 2021) (quoting *Oakwood*, 999 F.3d at 905).  A complaint that describes alleged trade secrets only through "broad categories of information" without providing "facts sufficient to narrow or define the alleged trade secrets at issue" contained within those categories fails to meet this particularity standard and is subject to dismissal.  *Signant Health Holding Corp. v. Definium Therapeutics, Inc.*, 2026 WL 1893641, at *3 (D. Del. July 1, 2026).

Courts have consistently dismissed trade secret claims where, as here, the plaintiff identifies only generic categories of business information rather than specific trade secrets.  In *Mallet*, the Third Circuit vacated a preliminary injunction where the purported trade secrets at issue consisted of "a list of general categories of business and technical information" holding that

12

such a list "could be used to describe documents found in any number of corporations" and was therefore insufficient. 16 F.4th at 382 (finding that high-level descriptions like "customer purchase orders demonstrating Mallet's pricing," "internal discussions of customers' preferences and complaints," and "a compilation of Mallet's product specification sheets" were insufficient and "falter[] against the standard for specifying a trade secret."). Similarly, in *Signant Health*, the Delaware District Court dismissed a DTSA claim where the plaintiff's purported trade secrets included "market strategies, proprietary data architecture, clinical trial methodologies, pricing models, and data quality monitoring procedures," because "[s]uch generalized allegations are insufficient to provide [defendant] with sufficient notice of the basis for [plaintiff's] trade secret misappropriation claim." 2026 WL 1893641, at *3-4 ("Signant's allegations do not meaningfully distinguish the alleged protected information from general business information, nor do they provide facts sufficient to narrow or define the alleged trade secrets at issue."). And, in *Lithero, LLC v. AstraZeneca Pharmaceuticals LP*, the District Court dismissed a DTSA claim where the complaint identified "large, general areas of information" related to the design and development of a particular product including "capabilities," "training process," and "data processing approach," but "d[id] not identify what the trade secrets are within those general areas." 2020 WL 4699041, at *2 (D. Del. Aug. 13, 2020) ("Without knowing, for example, what about [the product's] training process is a trade secret, Defendant is not put on sufficient notice of what it is accused of misappropriating.").

OPmobility's Complaint suffers from the same fatal defect. The Complaint identifies its purported trade secrets only through sweeping categories: "corporate strategy," "customer information," "merger, acquisition, and joint venture information," and "pricing strategy and structure." (Compl. ¶¶ 71–75.) Although OPmobility provides some description of these

13

categories, the descriptions remain too vague to distinguish secret information from what is publicly known or general industry knowledge.  For example, OPmobility describes its "Customer Information" category as including "detailed information about **nearly every aspect** of OPmobility's customer relationships," such as "customer-specific technical requirements, commercial terms, delivery and logistics arrangements, quality and warranty performance metrics."  *Id*. ¶ 73 (emphasis added).  The Complaint thus concedes on its face that this category sweeps in virtually any information a supplier might possess about its customers—much of which would be publicly known, readily ascertainable, or general industry knowledge.  OPmobility does not identify *which* customer relationships involve proprietary terms (or even whether these customers are actual or potential customers of Marelli), *what* specific requirements are secret, or *how* its assessments differ from ordinary competitive intelligence.  *See Mallet*, 16 F.4th at 383–84 (finding plaintiff "fail[ed] to explain how we or anyone else is to distinguish between what is generally known or available information and what it contends to be protectable trade secrets").  The same deficiency pervades the other categories.  *See* Compl. ¶¶ 72-75.  Here, as in *Signant Health*, "Plaintiff's failure to adequately identify the trade secrets renders the Court unable to determine if the Complaint plausibly alleges that Defendants misappropriated them."  2026 WL 1893641 at *4 (quoting *You Map, Inc. v. Snap Inc.*, 2021 WL 106498, at *7 (D. Del. Jan. 12, 2021)).  Because OPmobility fails to identify its trade secrets with particularity, its DTSA and DUTSA claims must be dismissed.

c.     *OPmobility Fails to Plausibly Allege Any Misappropriation*

OPmobility's trade secret claims also fail to present any well-pleaded factual allegations of misappropriation.  OPmobility does not allege that any Defendant ever received a particular trade secret belonging to OPmobility, reviewed a confidential document belonging to OPmobility,

attended a meeting where OPmobility's trade secrets were disclosed, or otherwise actually obtained information belonging to OPmobility.

The only allegations related to improper acquisition, use, or disclosure are the assertions that "Defendants have accessed, threaten to access, and both used and threaten to use OPmobility's trade secrets" because Mr. Favre's previous role at OPmobility "allowed him access" to confidential information, and that Mr. Favre now works "'closely' with the Ad Hoc Group 'to support Marelli's ongoing restructuring and strategic planning,'" including meeting with the Marelli Defendants' customers and business partners. Compl. ¶¶ 2, 111, 117, 127. Stripped of conclusory statements and formulaic recitations of the claim elements, the Complaint's allegations merely identify circumstances supporting an inference that Mr. Favre and the Marelli Defendants compete with OPmobility, but they fail to plausibly establish that Mr. Favre, Marelli, or SVP improperly acquired, used, or disclosed OPmobility's trade secrets. *See Labyrinth, Inc. v. Urich*, 2024 WL 295996, at *30 (Del. Ch. Jan. 26, 2024) ("Possessing a trade secret and investing in (or forming) a [] competitor, without more, [does] not constitute improper use" of a trade secret.) (cleaned up); *Battaglia Mgmt., Inc. v. Abramowicz*, 2024 WL 3183063, at *4 (D. Del. June 26, 2024) (finding plaintiff "failed to present a particularized allegation of misappropriation" where complaint merely alleged threadbare, conclusory statements that defendant "misappropriate[d]" or "unlawfully acquired" through "unlawful behavior").

Critically, the Complaint fails to allege that any Marelli Defendant or SVP ever acquired OPmobility's trade secrets, and if so, how. *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008) (dismissing DUTSA claim where the complaint failed to plausibly allege defendant obtained the information by improper means, or the nature of such means); *Fair Isaac Corp. v. Gurobi Optimization, LLC*, 2025 WL 2636403, at *6 (D. Del.

15

Sept. 12, 2025) (dismissing a DTSA claim where the former employee's only alleged possession of trade secrets resided inside his head, with no documents taken and no specific acts of disclosure or use alleged).   Nor does the Complaint adequately plead that Defendants improperly used OPmobility's trade secrets.   Indeed, the Complaint is "devoid of any specific details suggesting how [Defendants] impermissibly used" OPmobility's trade secrets, instead resorting to generalized, conclusory statements that Defendants "used" and "threaten to use" OPmobility trade secrets.  *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *8 (Del. Super. Ct. Aug. 7, 2019) ("Brightstar's Complaint asserts only that 'PCS misappropriated Brightstar's pricing information and used it to solicit business from Brightstar's suppliers' . . . without any supporting factual allegation whatsoever," and thus "fail to put the opposing party on notice of the claim being brought against it.") (cleaned up).

Under both the DUTSA and DTSA, courts have consistently dismissed similar trade secret claims relying solely on a combination of access to trade secrets plus opportunity for misappropriation.  *See, e.g., Battaglia*, 2024 WL 3183063, at *4 (dismissing DTSA and DUTSA claims that relied on generic allegations that defendant "has, is and/or is planning in the future to misappropriate [plaintiff's] trade secrets by disclosing and/or using that information in the course of her employment with  [a competitor]"); *Accenture*, 581 F. Supp. 2d at 663 (holding that the fact that both parties had a relationship with a mutual client does not, by itself, give rise to an inference of misappropriation and dismissing DUTSA claim); *Labyrinth*, 2024 WL 295996 at *30 ("Potential misuse does not establish actual misuse.").   That is precisely the type of pleading OPmobility seeks to rely on here.  Compl. ¶¶ 111, 117, 127.  The generic allegations in the Complaint related to Mr. Favre's alleged prior access to OPmobility's confidential information and subsequent participation in ordinary business activities are insufficient to plausibly allege any

16

misappropriation, and OPmobility is "not entitled to conduct a fishing expedition based upon such bare allegations." *Accenture*, 581 F. Supp. 2d at 663.

> d. *OPmobility's Trade Secret Claims Rely on a Theory of "Inevitable Disclosure" That Is Insufficient to State a Claim for Misappropriation*

OPmobility's trade secret claims rely on a theory of "inevitable disclosure" in which Mr. Favre's broad knowledge of OPmobility's alleged trade secrets (residing entirely in Favre's head) make it so that Mr. Favre cannot work for Marelli without inevitably disclosing those trade secrets. *See* Compl. ¶ 135 ("Mr. Favre cannot work for a competitor of OPmobility, like Marelli, in the same or similar position without inevitably calling upon and disclosing OPmobility's trade secrets.").

Such allegations of "inevitable disclosure" are insufficient to state a claim for actual or threatened misappropriation under the DTSA and DUTSA. Indeed, DTSA expressly provides that an injunction may not "prevent a person from entering into an employment relationship," and that any "conditions placed on such employment shall be based on evidence of threatened misappropriation *and not merely on the information the person knows*." 18 U.S.C. § 1836(b)(3)(A)(i)(I) (emphasis added). In *Fair Isaac*, the Delaware District Court dismissed a DTSA claim precisely because it requested "injunctive relief based on an inevitable disclosure theory and damages based on hypothetical future harm." 2025 WL 2636403, at \*6. There (as here), the plaintiff alleged only that the individual defendant possessed trade secrets "in his head" without plausibly alleging that "he has shared or plans to share such items" with his new employer as to support any claim of "threatened misappropriation." *Id.* at \*5, \*6. Consequently, the Delaware District Court dismissed the claim because "DTSA does not allow for injunctions" based "merely on the information the person knows." *Id.* at \*6 (quoting 18 U.S.C. § 1836(b)(3)(A)(i)(I)). That same reasoning applies here and requires dismissal of OPmobility's DTSA claim.

17

DUTSA does not contain any similar prohibition on injunctions based merely on the information known by a person, but allegations of "inevitable disclosure" are still insufficient to state a claim under DUTSA. *See Labyrinth*, 2024 WL 295996, at \*30 (rejecting allegations that former employee would "inevitably use and/or disclose" trade secrets by joining a competitor).

a.    *OPmobility's Trade Secret Claims Fail Independently as to SVP*

OPmobility's trade secret claims should be dismissed as to SVP for the additional reason that the Complaint fails to allege any actions that SVP itself, as distinct from Marelli, took in furtherance of misappropriation.

Throughout the Complaint, OPmobility improperly lumps all of the Defendants together and generically alleges conduct by "Defendants." *See In re Chicken Soup for the Soul Ent., Inc.*, 2025 WL 3533003, at \*4 (Bankr. D. Del. Dec. 9, 2025) (dismissing complaint as to two defendants because "group pleadings" "fail[ed] to differentiate the specific actions taken or the capacity in which the individual Defendants were acting"). Significantly, and as is clear from the Complaint itself, SVP is not an affiliate of Marelli. Indeed, the Complaint alleges that Marelli's own correspondence confirms that SVP "is neither an owner, nor a shareholder, nor a subsidiary of Marelli, nor does it control it" and that representatives of SVP "cannot be regarded as representatives of Marelli." Compl. ¶¶ 101, 104. Thus, OPmobility's own allegations foreclose any inference that the conduct of either SVP or Marelli may be imputed to the other, for pleading purposes, based on any corporate relationship.

There are no allegations in the Complaint regarding any specific actions taken by SVP in its individual capacity to misappropriate OPmobility's trade secrets. Allegations that SVP made inquiries regarding Favre's potential employment by Marelli, announced an intent to appoint Favre as CEO, and expressed the view that Favre's alleged non-compete obligations "might be

18

inapplicable" do not constitute "misappropriation" under either DTSA or DUTSA or otherwise support an inference that SVP acquired, disclosed, or used any trade secrets belonging to OPmobility. *See* 18 U.S.C. § 1839(5) (defining misappropriation as acquisition by improper means or unauthorized disclosure or use); 6 Del. C. § 2001(2) (same).  Mere participation in executive recruitment does not constitute acquisition or use of trade secrets within the meaning of either statute.

        2.        <u>OPmobility's Tortious Interference and Aiding and Abetting Claims Are Not Cognizable Under Delaware Law</u>

        a.        *OPmobility's Common Law Claims are Preempted by the DUTSA*

OPmobility's breach of fiduciary duty claim and at least part of its tortious interference claim should be dismissed as preempted by DUTSA.  DUTSA expressly preempts "conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a).  "To determine whether a tort claim is preempted by DUTSA, courts consider whether the claim is 'grounded in the same facts' as a misappropriation of trade secrets claim." *Battaglia*, 2024 WL 3183063, at *4 (citations omitted).  OPmobility's fiduciary duty claim alleges that Mr. Favre breached his duties by "using and disclosing OPmobility's confidential trade secrets" Compl. ¶ 152.  Likewise, OPmobility's tortious interference claim alleges that Defendants induced Mr. Favre to violate confidentiality obligations that prohibit the disclosure or use of the same alleged trade secrets. Compl. ¶¶ 143–147.

OPmobility's aiding and abetting breach of fiduciary duty claim is preempted by the DUTSA because the only underlying breach of fiduciary duty alleged is Mr. Favre's misappropriation of OPmobility's confidential information.  *See Battaglia*, 2024 WL 3183063, at *4 (dismissing breach of fiduciary duty claim as preempted by the DUTSA where "[t]he only breach of fiduciary duty that BMI alleges is the misappropriation of trade secrets"); *Ethypharm*

*S.A. Fr. V. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (DUTSA preempts "all claims stemming from the same acts as the alleged misappropriation . . . even if the information at issue is not a trade secret.").

Similarly, to the extent the tortious interference claim is premised on breach of confidentiality obligations, it arises from the same factual allegations underlying the DUTSA claim and is preempted. *See Battaglia*, 2024 WL 3183063, at *4 ("To the extent the alleged wrongful interference is Defendants' misappropriation of Plaintiff's' trade secrets, the claims are preempted by DUTSA.") (internal quotations omitted); *You Map, Inc. v. Snap Inc.*, 2021 WL 106498, at *9 (D. Del. Jan. 12, 2021), *report and recommendation adopted*, 2021 WL 327388 (D. Del. Feb. 1, 2021) (finding tortious interference claim was preempted to the extent the "alleged wrongful interference is Defendants' misappropriation of Plaintiff's secret technologies") (internal quotations omitted).

Accordingly, Counts Three and Count Four should be dismissed as preempted by the DUTSA to the extent they are based on the alleged disclosure, use, or misappropriation of OPmobility's confidential information.

#### b.    *Delaware Tort Law Does Not Apply to Out-of-State Conduct*

OPmobility's tortious interference and aiding and abetting claims should also be dismissed insofar as these claims are being brought under Delaware law. Just as DUTSA requires an act of misappropriation in Delaware, the common law claims of tortious interference and aiding and abetting breach of fiduciary duty require that the interfering conduct have some nexus to Delaware. Delaware courts have consistently held that Delaware tort law does not extend to conduct occurring entirely outside the state's borders, and this principle holds true even where parties to the litigation are Delaware entities. *See e.g., Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 971 (Del.

20

Ch. 2020) (Delaware tortious interference law inapplicable where none of the alleged interference occurred in Delaware, notwithstanding that plaintiff was a Delaware entity).

According to the Complaint, Defendants' alleged conduct related to the tortious interference or aiding and abetting claims (including recruiting Mr. Favre, communications with OPmobility executives in France, and deploying Mr. Favre to visit plants in Italy) all occurred entirely outside Delaware. Compl. ¶¶ 98–99, 104–109, 117. The Complaint fails to establish any nexus between the alleged tortious conduct and the State of Delaware. Where, as here, no act of alleged interference or aiding and abetting occurred in Delaware, the State's laws provide no cognizable claim. *Focus Financial*, 250 A.3d at 971 (holding "it is not reasonably conceivable that Delaware law could apply" where "[n]one of the events related to this claim took place in Delaware.").

Accordingly, Counts Three and Four should be dismissed to the extent they are asserted under Delaware common law.

3.      OPmobility Fails to Sufficiently Plead a Claim for Tortious Interference with Contract

In Delaware, tortious interference with contract requires: "(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Montway LLC v. Navi Transp. Servs. LLC*, 826 F. Supp. 3d 532, 544–45 (D. Del. 2026) (internal citations omitted). Plaintiffs contend that Defendants wrongfully induced Mr. Favre to violate both the confidentiality and non-compete provisions of his employment contract with OPmobility. Compl. ¶¶ 143-147. But the sparse allegations in the complaint do not provide a plausible factual basis to support the claim that Defendants *wrongfully* or *improperly* interfered with the contract between Mr. Favre and

OPmobility, or indeed that any confidentiality obligations were breached in the first place. As a result, Plaintiffs' tortious interference claim is without merit and should be dismissed.

          a.      *OPmobility Fails to Plead Actual Breach of Favre's Confidentiality Obligations*[5]

Plaintiffs have not plausibly alleged any breach of the confidentiality provisions of Mr. Favre's employment contract. *See Montway*, 826 F. Supp. 3d at 545 (granting dismissal for failure to plausibly allege any breach of contract or provide any explanation of how a breach occurred). Without such allegations, "a tortious interference claim is not viable." *Tatum v. Fairstead Affordable LLC*, 347 A.3d 1221, 1271 (Del. Ch. 2025).

Where the alleged breach of the underlying employment agreement is the use or disclosure of confidential information, a complaint must specifically allege that the individual actually used or disclosed such information—not merely that the individual had access to it or the opportunity to misuse it. *Labyrinth*, 2024 WL 295996 at *30; *Palm Bay Imports, Inc. v. Miron*, 55 F. App'x 52, 57 (3d Cir. 2003) ("[T]his Court fails to see how mere access to confidential information conclusively supports a claim of unlawful disclosure").

Plaintiffs fail to point to any particular disclosure of any confidential OPmobility information by Mr. Favre that would support a reasonable inference of misappropriation. The Complaint relies merely on the assumption that Mr. Favre shared confidential material by "meeting with current or potential customers of Marelli and OPmobility, engaging with shareholders, and visiting Marelli plants" but lack any specific allegations of disclosure. Compl. ¶ 117. These

---

[5]    Defendants do not make any arguments regarding claims arising from Mr. Favre's purported non-compete obligations because those issues are governed by French law and are currently at issue in the action initiated by Mr. Favre in the French Court. Defendants reserve all rights to make this and other arguments as to Mr. Favre's purported non-compete obligations after the French Court has ruled on these issues.

allegations are insufficient.  *See Labyrinth*, 2024 WL 295996 at *30 (granting dismissal because "potential misuse does not establish actual misuse"); *Savor, Inc. v. FMR Corp.*, 2004 WL 1965869, at *9 (Del. Super. Ct. July 15, 2004) ("Clearly, the opportunity to acquire information is not the same as actually acquiring it.").  The Complaint contains no information about which documents were allegedly disclosed, describe any confidential data shared during any of these meetings, or detail how any of these allegations involve the disclosure of confidential information. Pure conjecture cannot withstand a motion to dismiss.  *Accenture*, 581 F. Supp. 2d at 662–63 (explaining that, while plaintiffs are not expected to know the full extent of misappropriation at the complaint stage, a plaintiff should not be allowed to conduct a fishing expedition on defendants' systems to build their case).

b.       *OPmobility Fails to Plead Any Acts of Improper Interference*

OPmobility's claim for tortious interference should be dismissed because the Complaint fails to plausibly allege any intentional act constituting independently wrongful conduct or improper means.  *See Nelson v. Fleet Nat'l Bank*, 949 F. Supp. 254, 260 (D. Del. 1996) (tortious interference with contract claims "require a showing that the action taken was without justification, which involves consideration of whether the interference with the contract was improper").

The Complaint alleges only that: (1) four months after Mr. Favre left OPmobility, SVP and Marelli informed OPmobility they were considering him for the position of CEO; (2) OPmobility objected based on the non-compete clause in Mr. Favre's French-law governed contract; and (3) Defendants believed the non-compete was unenforceable and continued their pursuit. Compl. ¶¶ 97-103. There are no specific allegations of improper or unlawful conduct in Defendants' pursuit of Mr. Favre, no allegations that Defendants' actions were motivated by a desire to harm OPmobility, and no allegations that Defendants encouraged Mr. Favre to disclose confidential information.  *See Com. Nat'l Ins. Servs., Inc. v. Buchler*, 120 F. App'x 414, 419 (3d Cir. 2004)

23

("A competitor does not 'wrongfully interfere' with its competitor's at-will customers by simply competing for their business.") (citing Restatement (Second) of Torts § 768); *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009) ("[C]laims for unfair competition and tortious interference must necessarily be balanced against a party's legitimate right to compete.").

The Complaint creates no plausible inference that Defendants engaged in any improper or wrongful conduct, instead alleging merely that they pursued legitimate business interests through proper business and legal channels.  Indeed, OPmobility's own Complaint acknowledges that their business operates in a field which is "intensely competitive" and a "cutthroat market" (Compl. ¶¶ 15, 83), that Defendants were motivated by legitimate business purposes to pursue "a globally renowned figure in the automotive industry" (Compl. ¶ 112), and that Defendants did not reach out to Mr. Favre until after he had already departed OPmobility (Compl. ¶ 97.)  *See WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) ("Only if the defendant's *sole* motive was to interfere with the contract will [the actor's motive] support a finding of improper interference.").  Conduct that is a "legitimate part of doing business" is not improper and does not support a claim for tortious interference.  *New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 142 (Del. Ch. 2023); *see also Battaglia*, 2024 WL 3183063, at *4 (dismissing tortious interference claim because "the mere hiring away of employees from a rival is *per se* legal, and [plaintiff] does not allege facts that suggest this poaching was done in an unlawful manner.").

Nor does Defendants' awareness of the disputed non-compete alone create an inference of impropriety.  Courts in Delaware have recognized that actions taken under a good-faith belief of propriety do not constitute improper interference.  *See, e.g., Centrella v. Avantor, Inc.*, 2025 WL 3555119, at *7 (Del. Super. Ct. Nov. 24, 2025) (finding company's decision to litigate

24

enforceability of non-compete provision was not bad faith or improper in context of tortious interference claim, even if company was ultimately unsuccessful); *see also ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749, 751 (Del. 2010) ("The focus of a claim for tortious interference with contractual relations is upon the defendant's wrongful inducement . . . not upon whether the termination itself was legally justified."). As alleged in the Complaint, Defendants proactively notified OPmobility about their pursuit of Favre, confirmed Mr. Favre would not disclose confidential information, and communicated their good-faith belief that the non-compete was inapplicable, contradicting any inference of intentional and wrongful interference. Compl. ¶¶ 101, 104.

OPmobility further fails to satisfy the element of causation for this claim. When a contract is breached by the party's own independent actions, a third party cannot be held liable because the causal chain is broken. *See Stoltz v. Del. Real Est. Comm'n*, 473 A.2d 1258, 1264 (Del. Super. 1984) ("In the context of inducement to breach a contract, the word 'inducement' means to cause a party to choose one course of action rather than another."); *Centrella*, 2025 WL 3555119, at *9 (finding no tortious interference when the employee's own actions were the proximate cause of the contract breach). The Complaint does not allege that any of the Defendants had any contact with Mr. Favre while he was employed by OPmobility or induced him to leave OPmobility to find other employment. Rather, Plaintiffs concede that Mr. Favre was an active participant in the employment search which connected him to Defendants four months after departing OPmobility. Compl. ¶ 112. Plaintiffs' allegations of tortious interference fail to meet the causation element, and the claim should thus be dismissed.

        4.      OPmobility Fails to Sufficiently Plead a Claim for Aiding and Abetting Breach of Fiduciary Duty

A claim for aiding and abetting a breach of fiduciary duty contains four elements: "(1) the existence of a fiduciary relationship, (2) a breach of fiduciary duty, (3) knowing participation in that breach, and (4) damages proximately caused by the breach." *Young Women's Christian Ass'n of Rochester & Monroe Cnty. v. Hatteras Funds, LP*, 356 A.3d 459, 502–03 (Del. Ch. 2026). OPmobility alleges that Defendants aided and abetted Mr. Favre in purportedly breaching his duty of loyalty by "using and disclosing OPmobility's confidential trade secrets for his and the Defendants' own purposes." Compl. ¶ 152. This claim fails because the Complaint fails to allege plausibly that Mr. Favre has any cognizable continuing fiduciary duty of loyalty to OPmobility; because it is precluded by the doctrine of contractual preemption; and because OPmobility fails to allege any breach by Mr. Favre, let alone Defendants' "knowing participation" in such a breach.

OPmobility's aiding and abetting breach of fiduciary duty claim is based solely on Mr. Favre's alleged contractual duty not to use or disclose confidential information. The Complaint incorrectly asserts that "Mr. Favre owed a continuing fiduciary duty of loyalty to [OPmobility Holding USA, Inc.] at all times . . . up to, and continuing after, his departure." Compl. ¶ 151. However, once an officer or director resigns or is removed, the broad fiduciary duties, including the general duty of loyalty, terminate. *See In re Walt Disney Co. Derivative Litig*., 907 A.2d 693, 758 (Del. Ch. 2005) ("Just as Delaware law does not require directors-to-be to comply with their fiduciary duties, former directors owe no fiduciary duties.").

Moreover, this claim is precluded by the doctrine of contractual preemption. "[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim" and "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). OPmobility cannot seek relief against Defendants with whom it had no

26

contractual privity by transforming their contract claim against Mr. Favre into a claim for aiding and abetting breach of fiduciary duty. Instead, as the Delaware Supreme Court held in *Nemec*, "the [fiduciary] claim seeks to enforce obligations that are expressly addressed by contract []," those claims "must be adjudicated within the analytical framework of a breach of contract claim." *Id*. OPmobility "may not 'bootstrap' a breach of fiduciary duty claim into a breach of contract claim merely by restating the breach of contract claim as a breach of fiduciary duty" to expand the scope of express contractual provisions. *Backer v. Palisades Growth Cap. II, L.P.*, 246 A.3d 81, 109 (Del. 2021) (quoting *Grunstein v. Silva*, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009)).

Even if OPmobility's fiduciary claim is not precluded by the existence of Mr. Favre's employment contract, the claim should be dismissed on the merits for the same reasons as the tortious interference claim: OPmobility does not plausibly allege any underlying breach of confidentiality, or any conduct sufficient to show knowing participation by any of the Defendants. As discussed above for the tortious interference claim, the Complaint includes no plausible allegations that Mr. Favre actually disclosed any specific confidential information to the Defendants. *See Labyrinth*, 2024 WL 295996, at *30; *Accenture*, 581 F. Supp. 2d at 663 (dismissing DUTSA claim where complaint alleged only that defendant "possessed the trade secrets in question," but lacked allegations that defendant "obtained the information by improper means" or "disclosed or used the secrets"). In fact, OPmobility specifically asked Marelli if "it [] received any confidential information or trade secrets from [Mr. Favre]," indicating it was unaware of any specific disclosures in violation of Mr. Favre's duty of loyalty. Compl. ¶ 107. Absent a plausible underlying breach, there can be no aiding and abetting claim because "a claim for aiding and abetting a breach of fiduciary duty cannot survive if the underlying fiduciary duty claims do

27

not." *In re Hennessy Cap. Acquisition Corp. IV S'holder Litig.*, 318 A.3d 306, 329 (Del. Ch. 2024).

OPmobility fails to plausibly allege that Defendants "knowingly participated" in any breach, which requires showing that the defendant provided "'substantial assistance' to the primary violator." *In re Dole Food Co. S'holder Litig.*, 2015 WL 5052214, at *41 (Del. Ch. Aug. 27, 2015). The Complaint fails to identify any specific conduct by Defendants that would constitute substantial assistance, participation, or encouragement towards a breach—it relies solely on the allegation that Mr. Favre was "work[ing] closely" with the Ad Hoc Group. Compl. ¶ 111. But merely working with a former executive does not, without more, give rise to an inference of knowing participation in a fiduciary breach. *See Malpiede v. Townson*, 780 A.2d 1075, 1097–98 (Del. 2001) (dismissing aiding and abetting claim because defendant's participation in standard business negotiations did not give rise to an inference that defendant "participated in" the alleged breach, "conspired with" the fiduciary, or "otherwise caused" the fiduciary to breach his duties). To the contrary, Defendants repeatedly confirmed to OPmobility they had not received, and would not receive, any confidential information from Mr. Favre. Compl. ¶¶ 113, 116. Because the Complaint contains no well-pled allegations that the Defendants substantially participated in any breach, or that any underlying breach occurred, Count Four of the Complaint must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint.

28

Dated: August 6, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*

Laura Davis Jones
Timothy P. Cairns
Edward A. Corma
919 North Market St., 17th Floor
P.O. Box 8705
Wilmington, DE 19899
Telephone: (302) 652-4100
ljones@pszjlaw.com
tcairns@pszjlaw.com
ecorma@pszjlaw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Nicholas M. Adzima
Evan Swager
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
joshua.sussberg@kirland.com
nicholas.adzima@kirkland.com
evan.swager@kirkland.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ross M. Kwasteniet, P.C.
Spencer A. Winters, P.C.
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
ross. kwasteniet@kirkland.com
spencer.winters@kirkland.com

*Attorneys for Marelli Holdings Co., LTD.; Marelli Corporation; Marelli North America, INC.; Marelli Holding USA LLC; Marelli Tennessee USA LLC; Marelli Automotive Lighting USA LLC*

29

Dated: August 6, 2026

**COLE SHOTZ**

*/s/ Justin R. Alberto*

Justin R. Alberto
Stacy L. Newman
Jack M. Dougherty
500 Delaware Ave Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
jalberto@coleschotz.com
snewman@coleschotz.com
jdougherty@coleschotz.com


**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty Brimmage
2300 N. Field Street, Suite 1800
Dallas, TX  75201-2481
Telephone: (214) 969-2800
mbrimmage@akingump.com

Scott Alberino
Kate Doorley
2001 K Street, N.W.
Washington, D.C. 20006-1037
Telephone: (202) 887-4000
salberino@akingump.com
kdoorley@akingump.com

Roxanne Tizravesh
1111 Louisiana Street, 44th Floor
Houston, TX 77002
Telephone: (713) 220-5800
rtizravesh@akingump.com

*Attorneys for Strategic Value Partners, LLC*