**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MARELLI AUTOMOTIVE LIGHTING USA LLC, *et al.*,[1] | ) | Case No. 25-11034 (CTG) |
| Debtors. | ) | (Jointly Administered) |

# JOINT PLAN OF REORGANIZATION OF MARELLI AUTOMOTIVE LIGHTING USA LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO AMENDMENTS AND MODIFICATIONS, APPROVAL BY THE BANKRUPTCY COURT, AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com
ecorma@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
Evan Swager (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com
nicholas.adzima@kirkland.com
evan.swager@kirkland.com

-and-

Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Spencer A. Winters, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: ross.kwasteniet@kirkland.com
spencer.winters@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims, Noticing, and Solicitation Agent at https://www.veritaglobal.net/Marelli. The location of Marelli Automotive Lighting USA LLC's principal place of business is 26555 Northwestern Highway, Southfield, Michigan 48033.

## TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ..... 1**
A. Defined Terms ..... 1
B. Rules of Interpretation ..... 16
C. Computation of Time ..... 16
D. Governing Law ..... 17
E. Reference to Monetary Figures ..... 17
F. Reference to the Debtors or the Reorganized Debtors ..... 17
G. Controlling Document ..... 17
H. Consultation, Information, Notice, and Consent Rights ..... 17
I. Nonconsolidated Plan ..... 18

**ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY CLAIMS, AND DIP CLAIMS ..... 18**
A. Administrative Claims ..... 18
B. Professional Fee Claims ..... 18
C. DIP Claims ..... 19
D. Priority Tax Claims ..... 20
E. Restructuring Expenses ..... 20
F. Statutory Fees ..... 20

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 21**
A. Classification of Claims and Interests ..... 21
B. Summary of Classification ..... 21
C. Treatment of Claims and Interests ..... 21
D. Special Provision Governing Unimpaired Claims ..... 25
E. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ..... 25
F. Elimination of Vacant Classes ..... 26
G. Voting Classes; Presumed Acceptance by Non-Voting Classes ..... 26
H. Intercompany Interests ..... 26
I. Controversy Concerning Impairment ..... 26
J. Subordinated Claims and Interests ..... 26

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ..... 26**
A. General Settlement of Claims and Interests ..... 26
B. Restructuring Transactions ..... 27
C. The Reorganized Debtors ..... 27
D. Cancellation of Notes, Instruments, Certificates, and Other Documents ..... 27
E. Exemption from Certain Taxes and Fees ..... 28
F. Sources of Consideration for Restructuring Transactions ..... 28
G. New Stockholders Agreement ..... 28
H. Issuance and Distribution of New Common Stock ..... 28
I. Exit Facility ..... 29
J. Corporate Existence ..... 29
K. Vesting of Assets in the Reorganized Debtors ..... 29
L. Corporate Action ..... 30
M. New Organizational Documents ..... 30
N. Directors and Officers of the Reorganized Debtors ..... 30
O. Effectuating Documents; Further Transactions ..... 31
P. Preservation of Causes of Action ..... 31
Q. Management Incentive Plan ..... 31
R. Employee Obligations and Employee Arrangements ..... 32
S. Closing the Chapter 11 Cases ..... 32

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... 33**
A. Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 33
B. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ........ 34
C. Claims Based on Rejection of Executory Contracts or Unexpired Leases ........ 34
D. Cure of Defaults for Assumed, or Assumed and Assigned, Executory Contracts and Unexpired Leases ........ 34
E. Survival of the Debtors' Indemnification Obligations and Insurance Obligations ........ 35
F. Director, Officer, Manager, and Employee Liability Insurance ........ 35
G. Modifications, Amendments, Supplements, Restatements, or Other Agreements ........ 35
H. Reservation of Rights ........ 36
I. Nonoccurrence of Effective Date ........ 36
J. Contracts and Leases Entered Into After the Petition Date ........ 36

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ........ 36**
A. Timing and Calculation of Amounts to Be Distributed ........ 36
B. Disbursing Agent ........ 36
C. Rights and Powers of Disbursing Agent ........ 36
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions ........ 37
E. Manner of Payment ........ 38
F. Registration or Private Placement Exemption ........ 38
G. Tax Issues and Compliance with Tax Requirements ........ 39
H. Allocations ........ 39
I. No Postpetition Interest on Claims ........ 39
J. Foreign Currency Exchange Rate ........ 39
K. Setoffs and Recoupment ........ 39
L. Claims Paid or Payable by Third Parties ........ 40
M. Indefeasible Distributions ........ 40

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ........ 40**
A. Disputed Claims Process ........ 40
B. Allowance of Claims or Interests ........ 41
C. Claims Administration Responsibilities ........ 41
D. Estimation of Claims ........ 41
E. Adjustment to Claims Without Objection ........ 41
F. Time to File Objections to Claims ........ 42
G. Disallowance of Claims or Interests ........ 42
H. No Distributions Pending Allowance ........ 42
I. Distributions After Allowance ........ 42

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ........ 42**
A. Compromise and Settlement of Claims, Interests, and Controversies ........ 42
B. Discharge of Claims and Termination of Interests ........ 43
C. Term of Injunctions or Stays ........ 43
D. **Release of Liens** ........ 43
E. **Debtor Release** ........ 44
F. **Release by Holders of Claims or Interests** ........ 44
G. **Exculpation** ........ 45
H. **Injunction** ........ 45
I. Protection Against Discriminatory Treatment ........ 46
J. Reimbursement or Contribution ........ 46
K. Subordination Rights ........ 46

**ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN ........ 46**
A. Conditions Precedent to the Effective Date ........ 46
B. Waiver of Conditions ........ 48

C. Substantial Consummation ....... 48
D. Effect of Nonoccurrence of Conditions to the Effective Date ....... 48

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ....... 48**
A. Modification and Amendments ....... 48
B. Effect of Confirmation on Modifications ....... 49
C. Revocation or Withdrawal of this Plan ....... 49

**ARTICLE XI. RETENTION OF JURISDICTION ....... 49**

**ARTICLE XII. MISCELLANEOUS PROVISIONS ....... 51**
A. Immediate Binding Effect ....... 51
B. Additional Documents ....... 51
C. Dissolution of the Committee and Any other Statutory Committee ....... 51
D. Reservation of Rights ....... 51
E. Successors and Assigns ....... 52
F. Service of Documents ....... 52
G. Entire Agreement ....... 54
H. Exhibits ....... 54
I. Nonseverability of Plan Provisions ....... 54
J. Votes Solicited in Good Faith ....... 55
K. Closing of Chapter 11 Cases ....... 55
L. Waiver or Estoppel ....... 55

# INTRODUCTION

Marelli Automotive Lighting USA LLC and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 Cases (each a "Debtor" and, collectively, the "Debtors") propose this joint chapter 11 plan of reorganization (as amended, supplemented, or otherwise modified from time to time) for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in Article I.A of this Plan. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, and projections of future operations, as well as a summary and description of this Plan, the Restructuring Transactions, and certain related matters. The Debtors are proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. The classification of Claims and Interests set forth in Article III of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable and set forth herein. This Plan does not contemplate substantive consolidation of any of the Debtors.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD REVIEW THE SECURITIES LAW RESTRICTIONS AND NOTICES SET FORTH IN THIS PLAN (INCLUDING UNDER ARTICLE VI.F HEREOF) IN FULL.

THE ISSUANCE OF ANY SECURITIES REFERRED TO IN THIS PLAN SHALL NOT CONSTITUTE AN INVITATION OR OFFER TO SELL, OR THE SOLICITATION OF ANY INVITATION OR OFFER TO BUY, ANY SECURITIES IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION. NO ACTION HAS BEEN TAKEN, NOR WILL BE TAKEN IN ANY JURISDICTION THAT WOULD PERMIT A PUBLIC OFFERING OF ANY SECURITIES REFERRED TO IN THIS PLAN (OTHER THAN SECURITIES ISSUED PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE IN A DEEMED PUBLIC OFFERING) IN ANY JURISDICTION WHERE SUCH ACTION FOR THAT PURPOSE IS REQUIRED.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A. *Defined Terms*

Capitalized terms used in this Plan have the meanings ascribed to them below.

1. "*1145 Securities*" means any Securities offered, issued, or distributed pursuant to this Plan pursuant to section 1145 of the Bankruptcy Code, including the New Common Stock (excluding the New Common Stock issued in respect of the Management Incentive Plan).

2. "*Ad Hoc Group of Senior Lenders*" means that certain ad hoc group of Holders of Senior Loan Claims and DIP Lenders represented by the Ad Hoc Group of Senior Lenders' Professionals.

3. "*Ad Hoc Group of Senior Lenders' Professionals*" means (a) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Ad Hoc Group of Senior Lenders; (b) Houlihan Lokey Capital, Inc., as investment banker to the Ad Hoc Group of Senior Lenders; (c) AlixPartners, LLP, as financial advisor to the Ad Hoc Group of Senior Lenders; (d) Ernst & Young LLP, as tax advisor to the Ad Hoc Group of Senior Lenders; (e) Cole Schotz, P.C., as Delaware counsel to the Ad Hoc Group of Senior Lenders; and (f) other professionals or consultants retained by the Ad Hoc Group of Senior Lenders with the consent of the Debtors (not to be unreasonably withheld) from time to time regardless of whether such advisor was retained prior to or following the Petition Date.

4. "*Administrative Agent*" means the administrative agent under the Senior Loan Agreement, as applicable.

5. "*Administrative Claim*" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or after the Petition Date and prior to the Effective Date pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' business; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

6. *"Administrative Claims Bar Date"* means the deadline for Filing requests for payment of Administrative Claims (other than for the Restructuring Expenses), which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

7. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

8. "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under this Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of an Administrative Claim is not or shall not be required to be Filed); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) a Claim or Interest Allowed pursuant to this Plan, any stipulation approved by the Bankruptcy Court, or a Final Order of the Bankruptcy Court; or (d) a Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; *provided* that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order. Any Claim (except any Senior Loan Claim or any DIP Claim, in each case Allowed pursuant to this Plan or the DIP Orders) or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by the Plan, the Allowed amounts of Claims shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. A Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after and subject to the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest. "Allow" and "Allowing" shall have correlative meanings.

9. "*Assumed Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors.

10. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates against third parties or by third parties against the Debtors under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under other similar or related local, state, federal, or foreign statutes and common Law, including fraudulent transfer Laws.

11. "*Ballot*" means the ballot, approved pursuant to the Disclosure Statement Order, distributed to Holders of Impaired Claims entitled to vote on this Plan, on which such Holders desiring to vote shall indicate acceptance or rejection of this Plan and, as applicable, make any additional elections contained in such ballot.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

15. "*Business Day*" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks in the State of New York are closed for business as a result of a federal, state, or local holiday.

16. "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

17. "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

18. "*Causes of Action*" means any claims, cross-claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, disputed or undisputed, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state, federal or foreign law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) claims pursuant to section 362 or any Avoidance Actions.

19. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated cases Filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

20. "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

21. *"Claims Bar Date"* means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed in the Chapter 11 Cases, other than Administrative Claims.

22. "*Claims, Noticing, and Solicitation Agent*" means Kurtzman Carson Consultants LLC dba Verita Global, in its capacity as the claims, noticing, and solicitation agent in the Chapter 11 Cases for the Debtors and any successors appointed by an order of the Bankruptcy Court.

23. *"Claims Objection Bar Date"* means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

24. "*Claims Register*" means the official register of Claims against the Debtors maintained by the Clerk of the Bankruptcy Court or the Claims, Noticing, and Solicitation Agent.

25. "*Class*" means a class of Claims against, or Interests in, the Debtors as set forth in Article III of this Plan in accordance with section 1122(a) of the Bankruptcy Code.

26. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

27. "*Common Stock Interests*" means, collectively, all units of common stock interests in Marelli Holdings Co. Ltd.

28. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in this Plan.

29. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

30. "*Confirmation Hearing*" means the hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code at which the Debtors will seek Confirmation of this Plan.

31. "*Confirmation Order*" means the Bankruptcy Court's order confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

32. "*Consenting Emergency Lenders*" means, collectively, the Emergency Lenders that are signatories to the Restructuring Support Agreement and remain parties thereto as of the Effective Date, or any subsequent Emergency Lender that becomes party thereto in accordance with the terms of the Restructuring Support Agreement and remains party thereto as of the Effective Date.

33. "*Consenting Equity Sponsor*" means Kohlberg Kravis Roberts & Co L.P.

34. "*Consenting Lenders*" means the Consenting Emergency Lenders and the Consenting Senior Lenders.

35. "*Consenting Senior Bank Lenders*" means the Consenting Senior Lenders represented by the Consenting Senior Bank Lenders' Professionals.

36. "*Consenting Senior Bank Lenders' Professionals*" means (a) Davis Polk & Wardwell LLP, as restructuring counsel to Mizuho Bank, Ltd., solely in its capacity as Emergency Lender and Senior Lender, (b) Richards, Layton & Finger, P.A., as Delaware counsel to Mizuho Bank, Ltd., solely in its capacity as Emergency Lender and Senior Lender, (c) Nagashima Ohno & Tsunematsu, as Japanese counsel to Mizuho Bank, Ltd., (d) Anderson Mori & Tomotsune, as Japanese financing counsel to Mizuho Bank, Ltd., (e) Huron Consulting Services, LLC, as financial advisor to Mizuho Bank, Ltd., and (f) other professionals or consultants retained by the Consenting Senior Bank Lenders from time to time with the consent of the Debtors (not to be unreasonably withheld).

37. "*Consenting Senior Lenders*" means, collectively, the Senior Lenders that have executed and delivered counterpart signature pages to the Restructuring Support Agreement and remain parties thereto as of the Effective Date, or any subsequent Senior Lender that becomes party thereto in accordance with the terms of the Restructuring Support Agreement and remains party thereto as of the Effective Date.

38. "*Consenting Stakeholders*" means the Debtors, the Consenting Lenders, the Plan Sponsors, and the Consenting Equity Sponsor.

39. "*Consummation*" means the occurrence of the Effective Date.

40. "*Cure*" means all amounts, including an amount of $0, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the Debtors or Reorganized Debtors, as applicable, and the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

41. "*Debtors*" has the meaning provided in the preamble of this Plan.

42. "*Definitive Documents*" means (a) any documents in connection with the First Day Pleadings or "second day" pleadings and all orders sought pursuant thereto; (b) the DIP Documents; (c) the Exit Facility Documents; (d) the Solicitation Materials, including the Disclosure Statement and the Ballots; (e) the Disclosure Statement Order; (f) this Plan; (g) the Confirmation Order; (h) the Plan Supplement; (i) the New Organizational Documents; (j) the New Stockholders Agreement; (k) the Restructuring Transactions Memorandum; (l) such other definitive documentation as is necessary or desirable to consummate the Restructuring Transactions; (m) any other material exhibits, schedules, amendments, modifications, supplements, appendices, or other documents and/or agreements relating to any of the foregoing; and (n) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably necessary or desirable to consummate and document the transactions contemplated by this Plan or the Restructuring Transactions (including any exhibits, amendments, modifications, or supplements from time to time), which shall be in form and substance acceptable to the Debtors, the Required Plan Sponsors, and such other parties as required pursuant to the consent rights set forth in the Restructuring Support Agreement, to the extent set forth therein and as applicable.

43. "*DIP Agent*" means GLAS USA LLC (in such capacity, together with its successors and assigns).

44. "*DIP Amendment Final Order*" means the *Order (I) Authorizing the Debtors to Amend the DIP Credit Agreements; and (II) Granting Related Relief* [Docket No. 2218] entered by the Bankruptcy Court.

45. "*DIP Claim*" means, collectively, the Tranche A DIP Claims, the Tranche A-1 DIP Claims, the Tranche B DIP Claims, and the Tranche C Roll-Up DIP Claims.

46. "*DIP Credit Agreements*" means the Senior DIP Credit Agreement and the Junior DIP Credit Agreement, in each case, as amended from time to time, including pursuant to the DIP Amendment Final Order.

47. "*DIP Documents*" means all agreements, instruments, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, debtor-in-possession financing (including the DIP Orders and DIP Credit Agreements), which shall be acceptable to the Debtors and the Required DIP Lenders.

48. "*DIP Facilities*" means, collectively, the Senior DIP Facility and the Junior DIP Facility.

49. "*DIP Lenders*" means, collectively, the lenders under the DIP Facilities.

50. "*DIP Orders*" means, collectively, the Interim DIP Orders, the Final DIP Order, and the DIP Amendment Final Order.

51. "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by the Plan, any stipulation that is approved by the Bankruptcy Court, or a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or this Plan; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable Law or this Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof. "Disallow" and "Disallowance" shall have correlative meanings.

52. "*Disbursing Agent*" means the Debtors or the Reorganized Debtors, as applicable, or the Entity or Entities selected by the Debtors or the Reorganized Debtors with the consent of the Required Plan Sponsors (not to be unreasonably withheld) to make or facilitate distributions contemplated under this Plan.

53. "*Disclosure Statement*" means the disclosure statement in respect of this Plan, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law, to be approved pursuant to the Disclosure Statement Order.

54. "*Disclosure Statement Hearing*" means the hearing to be held by the Bankruptcy Court to consider the approval of the Disclosure Statement, as such hearing may be continued from time to time.

55. "*Disclosure Statement Order*" means a Final Order of the Bankruptcy Court approving the Disclosure Statement.

56. "*Disputed*" means a Claim or an Interest or any portion thereof: (a) that is not Allowed; (b) that is not Disallowed under this Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with applicable Law; (d) that is subject to a pending objection; or (e) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

57. "*Distribution Date*" means, unless otherwise ordered by the Bankruptcy Court, the Effective Date, or as soon as reasonably practicable thereafter; *provided*, that any Cash, Exit Facility Loans, or New Common Stock delivered to Holders of DIP Claims on account of any DIP Claims shall be delivered on the Effective Date.

58. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against the Debtors are eligible to receive distributions under this Plan on account of Allowed Claims, which date shall be the Confirmation Date, or such other date as is determined by the Debtors with the consent of the Required Plan Sponsors (not to be unreasonably withheld), or designated by an order of the Bankruptcy Court.

59. "*Effective Date*" means, with respect to this Plan, the first date that is a Business Day on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A hereof have been satisfied or waived (in accordance with Article IX.B); and (c) this Plan is declared effective by the Debtors. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

60. "*Emergency Lenders*" means the Holders of, or nominees, investment advisors, sub-advisors or managers of discretionary accounts that hold, from time to time, Emergency Loan Claims.

61. "*Emergency Loan Agreement*" means that certain money consumption and loan agreement, dated as of May 20, 2020, and as amended from time to time, by and among Marelli Holdings Co., Ltd., as borrower, those lenders party thereto, and Mizuho Bank, Ltd., as lender, security agent, and facility agent, as may be further amended, restated, amended and restated, or otherwise supplemented from time to time.

62. "*Emergency Loan Claims*" means any Claim on account of the Emergency Loans, including, for the avoidance of doubt, all accrued and unpaid interest, premiums, fees, and all other obligations, amounts, and expenses arising under or in connection with the Emergency Loan Agreement before or after the Petition Date, through the earlier of (a) the date of repayment in full of the Emergency Loan Claims, or (b) the Effective Date.

63. "*Emergency Loans*" means the term loans made under the Emergency Loan Agreement.

64. "*Employment Agreements*" means, collectively, each of the written contracts, agreements, policies, programs, and plans for compensation, bonuses, reimbursement, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance, and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs, and plans for bonuses and other incentives or

compensation for the Debtors' current or former employees, directors, officers, and managers, including executive compensation programs and existing compensation arrangements for the employees of the Debtors in each case existing with the Debtors as of or immediately prior to the Effective Date. For the avoidance of doubt, the Employment Agreements shall include, without limitation, all existing severance plans as of the Petition Date; *provided* that this definition excludes any severance agreements with any of the Debtors' employees that were not employed as of the Petition Date.

65. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

66. "*ERISA*" means Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461.

67. "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtor after the Petition Date through and including the Effective Date.

68. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) the Committee; (d) each member of the Committee; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), each of their respective Related Parties.

69. "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

70. "*Exit Facility*" means a new credit facility or any other form of financing to be entered into on the Effective Date in accordance with the Exit Facility Documents.

71. "*Exit Facility Agent*" means any Entity identified in the Exit Facility Documents in its capacity as administrative agent and collateral agent under the Exit Facility that is acceptable to the Exit Facility Lenders and the borrower(s) thereunder, and any successors and permitted assigns, in such capacity.

72. "*Exit Facility Credit Agreement*" means, collectively and/or as applicable, the credit agreement or credit agreements or any other governing document evidencing the Exit Facility.

73. "*Exit Facility Documents*" means all agreements, instruments, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to the Exit Facility.

74. "*Exit Facility Lenders*" means, collectively, the lenders party to the Exit Facility Credit Agreement.

75. "*Exit Facility Loans*" means the loans under the Exit Facility.

76. "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

77. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing, respectively, in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee, or, with respect to the filing of a Proof of Claim or Proof of Interest, file, filed, or filing, respectively, with the Claims, Noticing, and Solicitation Agent.

78. "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 449] entered by the Bankruptcy Court.

79. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or

amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal that has been or may be taken or any petition for certiorari or any motion for a new trial, reargument, reconsideration, or rehearing that has been or may be made or filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the motion for a new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order (if any such motion has been or may be granted), or have otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

80. "*First Day Pleadings*" means the "first-day" pleadings and related documentation requesting certain emergency relief, or supporting the request for such relief, Filed by the Debtors upon or shortly following the commencement of the Chapter 11 Cases, including any proposed orders to approve such first-day pleadings, and heard at the "first day" hearing.

81. "*General Unsecured Claim*" means any unsecured Claim, including, without limitation, (i) any Claim arising from or related to any indemnification obligation or provision that is not Reinstated or assumed pursuant to this Plan, and (ii) any Claim held by an ordinary course trade vendor of the Debtors against any of the Debtors on account of ordinary course goods and/or services provided to any of the Debtors, against a Debtor, that is not (a) a DIP Claim, (b) an Administrative Claim, (c) a Priority Tax Claim, (d) an Other Secured Claim, (f) an Other Priority Claim, (g) an Emergency Loan Claim, (h) a Senior Loan Claim, including any deficiency claim held by any Senior Lender on account of a Senior Loan Claim, (i) an Intercompany Claim, (j) a Preferred Equity Interest, (k) a Common Stock Interest, or (l) a Section 510(b) Claim.

82. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

83. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

84. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

85. "*Indemnified Parties*" means all current and former directors and officers, and current and former managers, employees, attorneys, accountants, investment bankers, and other Professionals of, or acting on behalf of, the Debtors, as applicable.

86. "*Independent Investigation*" means that certain investigation undertaken by the Special Committee, as more fully described in the Disclosure Statement.

87. "*Initial Tranche A Lender*" means Deutsche Bank AG, London Branch.

88. "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

89. "*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor or a Debtor's Affiliate.

90. "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

91. "*Interest*" means any equity security (as defined in Bankruptcy Code section 101(16)), any shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, profits interests, or any award of stock options, restricted stock units, performance stock units, equity appreciation rights, restricted equity, stock appreciation rights, or phantom equity of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, limited liability company interests, or other equity, ownership, or profits interests of

any Debtor including equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, consultants or contractors (in each case whether or not arising under or in connection with any Employment Agreement or program of a Debtor and whether or not certified, transferable, preferred, common, voting, or denominated "stock" or similar security).

92. "*Interim DIP Orders*" means (i) the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 109] and (ii) the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 355] entered by the Bankruptcy Court.

93. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001 and the rules and regulations promulgated thereunder, as applicable to the Chapter 11 Cases.

94. "*Junior DIP Credit Agreement*" means that certain *Junior Secured Superpriority Debtor-In-Possession Credit Agreement* [Docket No. 2218-2] (as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof) by and among the Debtors party thereto, the lenders party thereto, and the DIP Agent, setting forth the terms and conditions of the Junior DIP Facility.

95. "*Junior DIP Facility*" means that certain delayed-draw senior secured debtor-in-possession financing facility on the terms set forth in the Junior DIP Credit Agreement.

96. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

97. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

98. "*Management Incentive Plan*" means the post-emergence management incentive plan providing for the issuance, from time to time, of awards with respect to the New Common Stock to be adopted by the New Board following the Effective Date, the terms and conditions of which, including any and all awards granted thereunder, shall be determined by the New Board in all respects, including, without limitation, with respect to the participants, allocation, timing, form, and structure.

99. "*Marelli*" means Marelli Holdings Co., Ltd.

100. "*New Board*" means the initial board of directors of Reorganized Marelli as of the Effective Date, to be appointed in accordance with the Restructuring Support Agreement, Plan, and New Organizational Documents, whose identities shall be disclosed prior to the Effective Date.

101. "*New Common Stock*" means a single class of common equity or membership interests of the Reorganized Debtors issued on or after the Effective Date pursuant to this Plan.

102. "*New Organizational Documents*" means the new organizational and governance documents of the Reorganized Debtors and their subsidiaries and Affiliates, to be entered into on the Effective Date, including without limitation, certificates of incorporation, certificates of formation, certificates of limited partnership (or equivalent organization documents), limited liability agreements, limited liability company agreements (or equivalent governing documents), stockholders or shareholders agreements, operating agreements, equity subscription or purchase agreements, charters or by-laws, which shall be consistent in all material respects with the Restructuring Support Agreement, the Restructuring Term Sheet, and this Plan and otherwise in form and substance acceptable to the Required Plan Sponsors.

103. "*New Stockholders Agreement*" means that certain stockholders' agreement (or similar document or agreement) that will govern certain matters related to the governance of the Reorganized Debtors and the New Common Stock, which shall be consistent in all material respects with the Restructuring Term Sheet and this Plan.

104. "*Non-Participating Senior Lender*" means any Senior Lender who is not a Participating Senior Lender.

105. "*OEM Accommodation Agreements*" means the accommodation agreements entered into by and among the Debtors and certain of their customers and approved by the Bankruptcy Court, either by a separate Final Order(s) or as part of the Confirmation Order.

106. "*Other Priority Claim*" means any Claim against a Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

107. "*Other Secured Claim*" means any Secured Claim against a Debtor that is not a (a) DIP Claim, (b) Emergency Loan Claim, or (c) Senior Loan Claim.

108. "*Participating Senior Lender*" means any Senior Lender who is also a DIP Lender.

109. "*PBGC*" means the Pension Benefit Guaranty Corporation, a wholly owned United States government corporation, and an agency of the United States, created under Title IV of ERISA to administer the federal pension insurance program.

110. "*Pension Plan*" means the Marelli North America, Inc. Defined Benefit Plan, a single-employer defined benefit plan insured by PBGC.

111. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

112. "*Petition Date*" means June 11, 2025.

113. "*Plan*" means this joint chapter 11 plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto, as may be altered, amended, supplemented, or otherwise modified from time to time in accordance with Article X.A hereof and the terms of the Restructuring Support Agreement, including the Plan Supplement (as altered, amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Restructuring Support Agreement), which is incorporated herein by reference and made part of this Plan as if set forth herein.

114. "*Plan Sponsors*" means the DIP Lenders holding Tranche A-1 DIP Loans, Tranche B DIP Loans, and Tranche C DIP Loans (and/or commitments for such loans).

115. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (in each case, as may thereafter be amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Restructuring Support Agreement, this Plan, the Bankruptcy Code, the Bankruptcy Rules, and applicable Law), to be Filed by the Debtors with the Bankruptcy Court no later than seven (7) calendar days before the deadline to object to confirmation of this Plan to the extent available, or such later date as may be approved by the Bankruptcy Court, and additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement. The Plan Supplement may include the following, as applicable: (a) the New Stockholders Agreement; (b) the Exit Facility Documents; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the Schedule of Retained Causes of Action List; (e) the New Organizational Documents; (f) the Restructuring Transactions Memorandum; (g) the identities of the members of the New Board, as applicable, and the officers of the Reorganized Debtors, if any, including information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, to the extent known; and (h) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated under this Plan, each of which documents shall be subject to the consent rights as set forth in the Restructuring Support Agreement;

*provided, however*, that the Debtors shall consult the Committee on any alterations, amendments, supplements, or modifications to the Plan Supplement or the documents contained therein, impacting the treatment of Holders of General Unsecured Claims under this Plan.

116. "*Preferred Equity Interests*" means, collectively, all units of preferred equity interests in Marelli Holdings Co. Ltd.

117. "*Prepetition Agents*" means, collectively, the Administrative Agent and the Prepetition Emergency Loan Agent.

118. "*Prepetition Emergency Loan Agent*" means Mizuho Bank, Ltd., in its capacity as security agent and facility agent under the Emergency Loan Agreement.

119. "*Priority Claims*" means, collectively, all Priority Tax Claims and Other Priority Claims.

120. "*Priority Tax Claim*" means any Claim of a Governmental Unit against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

121. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under this Plan.

122. "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

123. "*Professional Fee Claim*" means any Administrative Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional on or after the Petition Date through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees have not been paid yet pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

124. "*Professional Fee Escrow Account*" means an interest-bearing escrow account funded by the Debtors with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount, which shall be in accordance with the DIP Budget (as defined in the DIP Orders).

125. "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, which shall be estimated pursuant to the method set forth in Article II.B.3 of this Plan.

126. "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

127. "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

128. "*Reinstate,*" "*Reinstated*," or "*Reinstatement*" means, with respect to Claims or Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

129. "*Related Party*" means, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

130. "*Released Party*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) the Consenting Stakeholders; (d) the DIP Agent and the DIP Lenders; (e) the Initial Tranche A Lender; (f) the Plan Sponsors; (g) the Prepetition Agents; (h) the Ad Hoc Group of Senior Lenders' Professionals; (i) the Consenting Senior Bank Lenders' Professionals; (j) the Committee; (k) each member of the Committee (solely in their capacities as such); (l) with respect to each of the Entities in foregoing clause (a) through the following clause (m), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and funds; and (m) with respect to each of the Entities in foregoing clause (a) through this clause (m), each of their Related Parties; *provided, however,* that any Holder of a Claim or Interest that objects to the releases in this Plan or elects to opt out of, or not opt in to, as applicable, the releases provided by this Plan shall not be a "Released Party."

131. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) the Consenting Stakeholders; (d) the DIP Agent and the DIP Lenders; (e) the Initial Tranche A Lender; (f) the Plan Sponsors; (g) the Prepetition Agents; (h) the Ad Hoc Group of Senior Lenders' Professionals; (i) the Consenting Senior Bank Lenders' Professionals; (j) the Committee; (k) each member of the Committee (solely in their capacities as such); (l) Holders of Claims or Interests who vote to accept this Plan; (m) Holders of Claims or Interests who vote to reject this Plan and are provided with the opportunity to opt out of the releases set forth herein and do not affirmatively opt out of the releases set forth herein; (n) Holders of Claims or Interests that are deemed to accept or deemed to reject this Plan and that affirmatively opt in to the releases set forth herein; (o) Holders of Claims or Interests who abstain from voting on this Plan and that affirmatively opt in to the releases set forth herein; (p) with respect to each of the Entities in the foregoing clauses (a) through the following clause (q), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and funds; and (q) with respect to each of the Entities in foregoing clause (a) through this clause (q), each of their Related Parties; *provided, however,* that any Holder of a Claim or Interest that (1) elects to opt out of, or not opt in to, as applicable, the releases provided by this Plan or (2) objects to the releases in this Plan, shall not be a "Releasing Party"[2] for purposes of this Plan.

132. "*Reorganized Debtors*" means the Debtors, or any successor or assign thereto, by merger, demerger, consolidation, reorganization, amalgamation, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, including Reorganized Marelli and one or more new Entities, in each case as determined by the Debtors, with the consent of the Required Plan Sponsors, on and after the Effective Date.

133. "*Reorganized Marelli*" means reorganized Marelli, any successor or assign thereto, by merger, demerger, amalgamation, consolidation, or otherwise (including Marelli Corporation or any subsidiary thereof) or any new corporation, limited liability company, partnership, or other Entity that may be formed to, among other things, directly or indirectly own and hold all or substantially all of the assets and/or equity (including share capital) of the Debtors, as applicable, in accordance with this Plan, and issue the New Common Stock to be distributed pursuant to the Restructuring Transactions and this Plan.

134. "*Required Ad Hoc Group Lenders*" means as of the relevant date, at least two (2) unaffiliated members of the Ad Hoc Group of Senior Lenders collectively holding (directly or indirectly, including by participation, swap or other derivative transaction) at least 75% of outstanding principal amount of Senior Loans held

2 For the avoidance of doubt, all releases remain subject to the Independent Investigation.

by all members of the Ad Hoc Group of Senior Lenders; *provided*, *however*, that if the counterparty to such participation, swap or other derivative transaction is also a Consenting Senior Lender, then such counterparty shall be deemed the Holder of the relevant Senior Loans, unless otherwise set forth on the signature pages of the document governing the participation, swap or other derivative transaction, until the economic or beneficial interest is transferred from such counterparty to the grantor. For the avoidance of doubt, unless otherwise set forth on the signature pages to the Restructuring Support Agreement, Senior Loans held by a Consenting Senior Lender pursuant to a participation, swap or derivative transaction, in which Senior Loans such Consenting Senior Lender does not hold any economic or beneficial ownership, shall only be deemed to be Senior Loans bound by this Agreement and over which such Consenting Senior Lender has dispositive or voting power to the extent such counterparty sub-participant is a Consenting Senior Lender party to this Agreement.

135. "*Required Consenting Emergency Lenders*" means, as of the relevant date, each Consenting Emergency Lender.

136. "*Required Consenting Senior Bank Lenders*" means, as of the relevant date, Consenting Senior Bank Lenders holding at least 50.1% of the aggregate outstanding principal amount of Senior Loans held by all Consenting Senior Bank Lenders.

137. "*Required DIP Lenders*" means, collectively, the Required Tranche A-1 DIP Lenders, the Required Tranche B/C DIP Lenders, and the Required Senior DIP Lenders.

138. "*Required Plan Sponsors*" means (i) at all times, at least two (2) unaffiliated Holders of Tranche A-1 DIP Loans, Tranche B DIP Loans and Tranche C DIP Loans holding at least 75% of each of the outstanding Tranche A-1 DIP Loans, Tranche B DIP Loans, and Tranche C DIP Loans and (ii) if this Plan provides for the repayment of the Tranche A-1 DIP Loans in a form other than repayment in full in Cash, Holders of Tranche A-1 DIP Loans holding 100% of the outstanding Tranche A-1 DIP Loans.

139. "*Required Senior DIP Lenders*" means, at any time, the Holders of at least 50.01% of the sum of (i) the aggregate unpaid principal amount of the Tranche A DIP Loans outstanding at such time and (ii) the aggregate unfunded Tranche A Commitments in effect at such time; *provided* that, so long as the Initial Tranche A Lender is a Tranche A DIP Lender that holds at least 10% of the sum of (i) the aggregate unpaid principal amount of Tranche A DIP Loans outstanding at such time and (ii) the aggregate unfunded Tranche A Commitments in effect at such time, "Required Senior DIP Lenders" shall include the Initial Tranche A Lender; *provided, further,* that at any time that there are two (2) or more unaffiliated Tranche A DIP Lenders, "Required Senior DIP Lenders" shall include at least two (2) unaffiliated Tranche A DIP Lenders.

140. "*Required Tranche A-1 DIP Lenders*" means, at any time, at least two (2) unaffiliated Holders of at least 75% of the sum of (i) the aggregate unpaid principal amount of the Tranche A-1 DIP Loans outstanding at such time and (ii) the aggregate unfunded Tranche A-1 Commitments in effect at such time.

141. "*Required Tranche B/C DIP Lenders*" means at any time, at least two (2) unaffiliated Holders of at least 75% of the sum of (i) the aggregate unpaid principal amount of the Tranche B DIP Loans outstanding at such time and (ii) the aggregate unfunded Tranche B Commitments in effect at such time.

142. "*Restructuring*" means the restructuring of the Debtors pursuant to the terms of this Plan and the Restructuring Support Agreement.

143. "*Restructuring Expenses*" means all reasonable and documented prepetition and postpetition fees and expenses of any advisors to the Consenting Stakeholders, the DIP Lenders, the Initial Tranche A Lender, the DIP Agent, and the Prepetition Agents, and any fees and expenses payable under the DIP Documents, including fees and expenses of the DIP Lenders and DIP Agent to the extent provided therein; including, for the avoidance of doubt, the fees and expenses incurred by the Ad Hoc Group of Senior Lenders' Professionals and the Consenting Senior Bank Lenders' Professionals.

144. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, made and entered into as of June 11, 2025, including all exhibits thereto (including the Restructuring Term Sheet), by and among the Debtors and the Consenting Lenders, Plan Sponsors, and Consenting Equity Sponsor party thereto from time to time, as such may be amended from time to time in accordance with its terms.

145. "*Restructuring Term Sheet*" means that certain term sheet attached as <u>Exhibit B</u> to the Restructuring Support Agreement.

146. "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, reorganizations, arrangements, continuances, restructurings, transfers, conversions, dispositions, divestments, demergers, separations, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary to implement the transactions described in this Plan, as described in more detail in Article IV.B herein and the Restructuring Transactions Memorandum.

147. "*Restructuring Transactions Memorandum*" means that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Restructuring Transactions, the form of which shall be included in the Plan Supplement.

148. "*Retained Causes of Action List*" means a list of all retained Claims and Causes of Action of the Debtors, which shall be included in the Plan Supplement.

149. "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan, which shall be included in the Plan Supplement, as amended from time to time.

150. "*Schedules*" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by each of the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may have been or may be amended, modified, or supplemented from time to time.

151. "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code.

152. "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to this Plan as a secured Claim.

153. "*Securities Act*" means the U.S. Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

154. "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

155. "*Senior DIP Credit Agreement*" means that certain *First-Out Super-Senior Secured Superpriority Debtor-in-Possession Credit Agreement* [Docket No. 2218-1] (as amended, restated, amended and restated, modified, or supplemented from time to time in accordance with the terms thereof) by and among the Debtors party thereto, the lenders party thereto and GLAS USA LLC, setting forth the terms and conditions of the Senior DIP Facility.

156. "*Senior DIP Facility*" means that certain delayed draw first-out super-senior secured debtor-in-possession financing facility pursuant to the Senior DIP Credit Agreement.

157. "*Senior Lenders*" means the Holders of, or nominees, investment advisors, sub-advisors, or managers of discretionary accounts that hold, from time to time, Senior Loan Claims.

158. "*Senior Loan Agreement*" means that certain facility agreement, dated as of March 23, 2017, and as amended from time to time, by and among Marelli Holdings Co., Ltd. as borrower, those lenders and arrangers party thereto, Mizuho Bank Ltd, as agent, and KKR Capital Markets Japan Ltd., as the coordinator, as may be further amended, restated, amended and restated, or otherwise supplemented from time to time.

159. "*Senior Loan Claims*" means any Claim (whether held directly or indirectly, including by participation, swap or other derivative transactions) on account of the Senior Loan Agreement.

160. "*Senior Loan Documents*" means that Senior Loan Agreement together with all other related documents, instruments, and agreements including all Loan Documents (as defined in the Senior Loan Agreement), in each case as supplemented, amended, restated, or otherwise modified from time to time.

161. "*Senior Loans*" means the term and revolving loans made under the Senior Loan Agreement, including, for the avoidance of doubt, all accrued and unpaid interest, premiums, fees, and all other obligations, amounts, and expenses arising under or in connection with the Senior Loan Agreement before the Petition Date.

162. "*Solicitation Materials*" means, as applicable, any documents, forms, Ballots, notices, and other materials provided in connection with the solicitation of votes on this Plan, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

163. "*Special Committee*" means that certain special committee of the board of managers of Debtor Marelli Holdings Co., Ltd., comprised of Stefan Selig, Roger Meltzer, and Noboru Yamamoto.

164. "*Tranche A Commitment*" means with respect to any Tranche A DIP Lender, the commitment of such Tranche A DIP Lender to make Tranche A DIP Loans under the Senior DIP Credit Agreement.

165. "*Tranche A DIP Claims*" means any Claim on account of the Tranche A DIP Loans.

166. "*Tranche A DIP Lenders*" means the Holders of the Tranche A DIP Loans.

167. "*Tranche A DIP Loans*" means the first-out super-senior secured "new money" term loans provided under the Senior DIP Facility.

168. "*Tranche A-1 Commitment*" means with respect to any Tranche A-1 DIP Lender, the commitment of such Tranche A-1 DIP Lender to make Tranche A-1 DIP Loans under the Junior DIP Credit Agreement.

169. "*Tranche A-1 DIP Claims*" means any Claim on account of the Tranche A-1 DIP Loans.

170. "*Tranche A-1 DIP Lenders*" means the Holders of the Tranche A-1 DIP Loans.

171. "*Tranche A-1 DIP Loans*" means the senior secured "new money" term loans provided under the Junior DIP Facility.

172. "*Tranche B Commitment*" means with respect to any Tranche B DIP Lender, the commitment of such Tranche B DIP Lender to make Tranche B DIP Loans under the Junior DIP Credit Agreement.

173. "*Tranche B DIP Claims*" means any Claim on account of the Tranche B DIP Loans.

174. "*Tranche B DIP Lenders*" means the Holders of the Tranche B DIP Loans.

175. "*Tranche B DIP Loans*" means the secured "new money" term loans provided under the Junior DIP Facility.

176. "*Tranche C DIP Lenders*" means the Holders of the Tranche C DIP Loans.

177. "*Tranche C DIP Loans*" means the roll up of the Senior Loan Claims held by the DIP Lenders into the Junior DIP Facility, as authorized by the DIP Orders.

178. "*Tranche C Roll-Up DIP Claims*" means any Claim on account of the Tranche C DIP Loans.

179. "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

180. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

181. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash on the Effective Date.

B. *Rules of Interpretation*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (3) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (4) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter have been or may thereafter be validly amended, amended and restated, supplemented, or otherwise modified; (5) unless otherwise specified, any reference to an Entity as a Holder of a Claim or Interest, includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (7) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to any particular portion of this Plan; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (10) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) unless otherwise specified, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases; (14) any effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (15) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; and (18) the use of "include" or "including" is without limitation unless otherwise stated.

C. *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D. *Governing Law*

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of Laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of this Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the Laws of the jurisdiction of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E. *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F. *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G. *Controlling Document*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

H. *Consultation, Information, Notice, and Consent Rights*

Notwithstanding anything to the contrary in this Plan, the Disclosure Statement, or the Confirmation Order, any and all consent and approval rights set forth in the DIP Orders, the DIP Credit Agreements, the Restructuring Support Agreement, including rights and limitations with respect to the form and substance of any Plan Supplement document or Definitive Document (including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents) shall be incorporated herein by this reference (including to the applicable definitions in Article I.A) and fully enforceable as if stated in full herein. For the avoidance of doubt, Consenting Stakeholders' consent shall not be required for the filing of any ministerial notices and similar ministerial documents, retention applications, fee applications, fee statements, similar pleadings or motions relating to the retention or fees of any professional, or statements of financial affairs and schedules of assets and liabilities.

The absence in this Plan of references to any and all information, notice, and consent rights set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of this Plan, all exhibits to this Plan, and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair, modify or negate such rights.

I. *Nonconsolidated Plan*

Although for purposes of administrative convenience and efficiency this Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, this Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY CLAIMS, AND DIP CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A. *Administrative Claims*

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Restructuring Expenses, Professional Fee Claims, DIP Claims or subject to 11 U.S.C. § 503(b)(1)(D), unless previously Filed, requests for payment of Allowed Administrative Claims (other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code) must be Filed and served on the Debtors or Reorganized Debtors, as applicable, no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity. Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party by the Claims Objection Bar Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order of the Bankruptcy Court.

Except with respect to the Professional Fee Claims, DIP Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code, and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor(s) against which such Allowed Administrative Claim is asserted agree to less favorable treatment for such Holder, or such Holder has been paid by any Debtors on account of such Allowed Administrative Claim prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive, subject to the consent of the Ad Hoc Group of Senior Lenders (other than Administrative Claims held by Consenting Senior Bank Lenders), an amount of Cash equal to the amount of the unpaid or unsatisfied portion of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court. For the avoidance of doubt, nothing contained in this Article II.A is intended as or shall be construed or deemed to be a waiver of any party's rights to dispute any Claim, including any Administrative Claims, on any grounds.

B. *Professional Fee Claims*

1. Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and

a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules. The Reorganized Debtors shall pay Professional Fee Claims in Cash to such Professionals in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account. For the avoidance of doubt, the Ad Hoc Group of Senior Lenders' Professionals shall not be required to File any fee applications in respect of their Professional Fee Claims with the Bankruptcy Court. The Ad Hoc Group of Senior Lenders' Professionals Professional Fee Claims shall be paid pursuant to the terms of the Restructuring Support Agreement, the Restructuring Term Sheet, and the DIP Orders.

2. Professional Fee Escrow Account

No later than the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Reorganized Debtors, as applicable. After all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3. Professional Fee Escrow Amount

Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid Professional Fee Claims incurred in rendering services to the Debtors or the Committee before and as of the anticipated Effective Date, and shall deliver such estimate no later than five (5) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors shall estimate the unpaid and unbilled fees and expenses of such Professional for purposes of funding the Professional Fee Escrow Account. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

4. Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided for in this Plan, from and after the Confirmation Date, the Debtors and/or the Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to administration of the Chapter 11 Cases, prosecution of Causes of Action, and implementation of this Plan and Consummation incurred by the Debtors, the Reorganized Debtors, and/or the Committee. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court.

C. *DIP Claims*

Pursuant to this Plan and the DIP Orders, the Tranche A DIP Claims, Tranche A-1 DIP Claims, Tranche B DIP Claims, and Tranche C Roll-Up DIP Claims shall constitute Allowed superpriority Administrative Claims in an amount equal to the outstanding principal amount of the Tranche A DIP Loans, Tranche A-1 DIP Loans, Tranche B DIP Loans, and Tranche C DIP Loans, as applicable, as of the Effective Date, together with any accrued and unpaid

interest thereon and any other DIP Obligations (as defined in the Final DIP Order and amended by the DIP Amendment Final Order) or other amounts due, owing, or payable under the DIP Facilities, as applicable.

On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to other treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim:

1. each Holder of a Tranche A DIP Loan shall be paid in full in Cash;

2. each Holder of a Tranche A-1 DIP Loan shall be paid in full in Cash;

3. each Holder of a Tranche B DIP Loan shall, at the election of the Required Plan Sponsors and which election shall be applicable to all Tranche B DIP Loan Claims: (a) be paid in full in Cash; (b) exchange all or a portion of their Tranche B DIP Claims for Exit Facility Loans and be paid in Cash for any Tranche B DIP Claims not exchanged for Exit Facility Loans; or (c) convert all or a portion of their Tranche B DIP Claims into their *Pro Rata* share of New Common Stock or a combination of Cash and New Common Stock (subject to dilution by the Management Incentive Plan and any other equity issued by the Reorganized Debtors with the consent of the Required Plan Sponsors); and

4. each Holder of a Tranche C DIP Loan shall receive their *Pro Rata* share of New Common Stock (subject to dilution by the Management Incentive Plan and any other equity issued by the Reorganized Debtors with the consent of the Required Plan Sponsors).

Upon the satisfaction of the Allowed DIP Claims in accordance with the terms of this Plan, or other such treatment as contemplated by this Article II.C of this Plan, all guarantees provided with respect to such Allowed DIP Claims shall be automatically released, terminated, and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

D. *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

E. *Restructuring Expenses*

On the Effective Date or as soon as reasonably practicable thereafter, the Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash (to the extent not previously paid) in accordance with, and subject to, as applicable, the terms of the Restructuring Support Agreement and the DIP Orders and any other fee arrangements, without any requirement to File retention applications, fee applications, or any other applications in the Chapter 11 Cases and without any requirement for further notice or Bankruptcy Court review or approval. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. Following the Effective Date, invoices for all Restructuring Expenses shall be submitted to the Reorganized Debtors for payment.

F. *Statutory Fees*

All fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) plus any interest due and payable under 31 U.S.C. § 3717 (together, the "Quarterly Fees") before the Effective Date shall be paid by the applicable Reorganized Debtor (or the Disbursing Agent on behalf of each applicable Reorganized Debtor) for each quarter (including any fraction thereof) until such Reorganized Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

# ARTICLE III.
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Classification of Claims and Interests*

Except for the Claims addressed in Article II of this Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to this Plan and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B. *Summary of Classification*

The classification of Claims against and Interests in each Debtor pursuant to this Plan is summarized in the following chart. This Plan constitutes a separate chapter 11 plan for each of the Debtors, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and any such Classes shall be treated as set forth in Article III.E hereof. Voting tabulations for recording acceptances or rejections of this Plan will be conducted on a Class-by-Class basis as set forth above.[3]

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Emergency Loan Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 4 | Senior Loan Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Preferred Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Common Stock Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

C. *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable, in each case with the consent of the Required Plan Sponsors (not to be

3 The Debtors reserve the right to separately classify Claims or Interests to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable Law; *provided* that the Debtors shall consult the Required Plan Sponsors.

unreasonably withheld). Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1. Class 1 – Other Secured Claims

(a) *Classification*: Class 1 consists of all Other Secured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees, to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the election of the Debtors or Reorganized Debtors with the consent of the Required Plan Sponsors (not to be unreasonably withheld), as applicable, either:

(i) payment in full in Cash of the unpaid portion of its Other Secured Claim on the Effective Date or as soon as reasonably practicable thereafter (or if payment is not then due, shall be paid in accordance with its terms);

(ii) Reinstatement; or

(iii) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired under this Plan. Holders of Other Secured Claims are conclusively presumed to have accepted this Plan under section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject this Plan.

2. Class 2 – Other Priority Claims

(a) *Classification*: Class 2 consists of all Other Priority Claims against any Debtor.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired under this Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan under section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject this Plan.

3. Class 3 – Emergency Loan Claims

(a) *Classification*: Class 3 consists of all Emergency Loan Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Emergency Loan Claim agrees to a less favorable treatment and to the extent not paid prior to the Effective Date, on the Effective Date, each Holder of an Allowed Emergency Loan Claim shall receive, in full

and final satisfaction, settlement, release and discharge of and in exchange for each Holder's Allowed Emergency Loan Claim, payment in full in Cash.[4]

(c) *Voting*: Class 3 is Unimpaired under this Plan. Holders of Allowed Emergency Loan Claims are conclusively presumed to have accepted this Plan under section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Emergency Loan Claims are not entitled to vote to accept or reject this Plan.

4. <u>Class 4 – Senior Loan Claims</u>

(a) *Classification*: Class 4 consists of all Senior Loan Claims.

(b) *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed Senior Loan Claim agrees to a less favorable treatment:

(i) each Non-Participating Senior Lender shall, on account of such Holder's Allowed Senior Loan Claim, receive Cash in an amount equal to 11.00% of the principal amount of such Holder's Allowed Senior Loan Claim; and

(ii) each Participating Senior Lender shall waive any recovery on account of such Holder's Allowed Senior Loan Claim.

For the avoidance of doubt, the recovery set forth for this Class 4 shall be the only recovery for Senior Loan Claims and Holders of Senior Loan Claims shall not be entitled to treatment in any other Class, including, for the avoidance of doubt, on account of any purported deficiency claim.[5]

(c) *Voting*: Class 4 is Impaired under this Plan. Holders of Allowed Senior Loan Claims are entitled to vote to accept or reject this Plan.

5. <u>Class 5 – General Unsecured Claims</u>

(a) *Classification*: Class 5 consists of all General Unsecured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, at the option of the Debtors with the consent of the Required Plan Sponsors, each Holder of an Allowed General Unsecured Claim shall either

---

4 **Note:** The Debtors have requested an amendment to the Restructuring Support Agreement's proposed Plan treatment of the Emergency Loan Claims from the applicable Consenting Lenders.

Additionally, the Debtors are engaged in discussions with their key customers regarding the OEM Accommodation Agreements. The Debtors expect that they will reach an agreement on economic terms of the OEM Accommodation Agreements in advance of the Disclosure Statement Hearing and memorialize such economic terms in OEM Accommodation Agreements prior to the Confirmation Date. To the extent that the concessions obtained from the Debtors' customers are insufficient to support the business plan relied upon in the Debtors' exit financing process, the Debtors may seek further amendments to the terms of the Restructuring Support Agreement.

5 **Note:** The Debtors have requested an amendment to the Restructuring Support Agreement's proposed Plan treatment of the Senior Loan Claims from the applicable Consenting Lenders.

Additionally, the Debtors are engaged in discussions with their key customers regarding the OEM Accommodation Agreements. The Debtors expect that they will reach an agreement on economic terms of the OEM Accommodation Agreements in advance of the Disclosure Statement Hearing and memorialize such economic terms in OEM Accommodation Agreements prior to the Confirmation Date. To the extent that the concessions obtained from the Debtors' customers are insufficient to support the business plan relied upon in the Debtors' exit financing process, the Debtors may seek further amendments to the terms of the Restructuring Support Agreement.

(i) be Reinstated; or (ii) receive other treatment rendering such Allowed General Unsecured Claim as Unimpaired under this Plan.[6]

(c) *Voting*: Class 5 is Unimpaired under this Plan. Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted this Plan under section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject this Plan.

6. Class 6 – Intercompany Claims

(a) *Classification*: Class 6 consists of all Intercompany Claims.

(b) *Treatment*: Each Allowed Intercompany Claim shall be, at the option of the Reorganized Debtors, with the consent of the Required Plan Sponsors, and in a manner consistent with the Restructuring Transactions Memorandum, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as reasonably determined by the Reorganized Debtors and the Required Plan Sponsors.

(c) *Voting*: Class 6 is either Unimpaired, and the Holders of Allowed Intercompany Claims are conclusively deemed to have accepted this Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and the Holders of Allowed Intercompany Claims are conclusively deemed to have rejected this Plan under section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject this Plan.

7. Class 7 – Intercompany Interests

(a) *Classification*: Class 7 consists of all Intercompany Interests.

(b) *Treatment*: In full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Intercompany Interest, Allowed Intercompany Interests shall, in a manner consistent with the Restructuring Transactions Memorandum, as applicable, be either:

(i) Reinstated; or

(ii) distributed, contributed, set off, cancelled, and released without any distribution on account of such Claims, or otherwise addressed at the option of the Reorganized Debtors, with the consent of the Required Plan Sponsors (not to be unreasonably withheld).

(c) *Voting*: Class 7 is either Unimpaired, and the Holders of Allowed Intercompany Interests are conclusively deemed to have accepted this Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and the Holders of Allowed Intercompany Interests are conclusively deemed to have rejected this Plan under section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject this Plan.

8. Class 8 – Preferred Equity Interests

---

6 **Note:** The Debtors and the Required Plan Sponsors continue to diligence the General Unsecured Claims. Subject to completion of such diligence efforts, the Debtors may seek to further amend the treatment of General Unsecured Claims in advance of the Disclosure Statement Hearing.

(a) *Classification*: Class 8 consists of all Preferred Equity Interests.

(b) *Treatment*: All Preferred Equity Interests will be cancelled, released, and extinguished and will be of no further force and effect. No Holders of Preferred Equity Interests will receive a distribution under this Plan.

(c) *Voting*: Class 8 is Impaired under this Plan. Holders of Allowed Preferred Equity Interests are conclusively deemed to have rejected this Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Preferred Equity Interests are not entitled to vote to accept or reject this Plan.

9. <u>Class 9 – Common Stock Interests</u>

(a) *Classification*: Class 9 consists of all Common Stock Interests.

(b) *Treatment*: All Common Stock Interests will be cancelled, released, and extinguished and will be of no further force and effect. No Holders of Common Stock Interests will receive a distribution under this Plan.

(c) *Voting*: Class 9 is Impaired under this Plan. Holders of Allowed Common Stock Interests are conclusively deemed to have rejected this Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Common Stock Interests are not entitled to vote to accept or reject this Plan.

10. <u>Class 10 – 510(b) Claims</u>

(a) *Classification*: Class 10 consists of all Section 510(b) Claims.

(b) *Allowance*: Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

(c) *Treatment*: On the Effective Date, all Section 510(b) Claims will be cancelled, released, discharged, extinguished, and will be of no further force or effect, and Holders of Section 510(b) Claims will not receive any distribution on account of such Section 510(b) Claims.

(d) *Voting*: Class 10 is Impaired under this Plan. Holders of Allowed Section 510(b) Claims (if any) are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Section 510(b) Claims (if any) are not entitled to vote to accept or reject this Plan.

D. *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

E. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by at least one or more of the Classes entitled to vote pursuant to Article III.B of this Plan. The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify this Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or

Interests Unimpaired to the extent permitted by the Restructuring Support Agreement, the Bankruptcy Code, and the Bankruptcy Rules.

F. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G. *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests in such Class votes to accept or reject this Plan, this Plan shall be deemed accepted by such Class.

H. *Intercompany Interests*

To the extent Reinstated under this Plan, distributions on account of Intercompany Interests are being received by Holders of such Intercompany Interests solely to use certain funds and assets as set forth in this Plan to make certain distributions to the Holders of certain Allowed Claims and satisfy certain obligations of certain other Debtors and otherwise for uses as are contemplated by this Plan.

I. *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

J. *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

A. *General Settlement of Claims and Interests*

To the greatest extent permissible under the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to this Plan. To the greatest extent permissible under the Bankruptcy Code, this Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims against and Interests in the Debtors. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be, and shall be, final.

B. *Restructuring Transactions*

Before, on, and after the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions in accordance with the terms, conditions, and consent rights under the Restructuring Support Agreement, including: (1) the execution and delivery of any appropriate agreements or other documents of merger, demerger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of this Plan and the Restructuring Support Agreement, and that satisfy the requirements of applicable Law and any other terms to which the applicable Entities may agree, including the documents comprising the Plan Supplement and the New Organizational Documents; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and Restructuring Support Agreement and having other terms for which the applicable parties agree; (3) the execution, delivery, and filing of appropriate certificates or articles of incorporation, reincorporation, merger, demerger, consolidation, conversion, or dissolution pursuant to applicable Law, including any applicable New Organizational Documents; (4) the issuance and distribution of New Common Stock; (5) the consummation of the Exit Facility, including the execution, delivery, and filing of all Exit Facility Documents and other closing deliverables; (6) such other transactions that are required to effectuate the Restructuring Transactions, including as contemplated by the Restructuring Support Agreement; and (7) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable Law. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all of the foregoing and all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate this Plan and the Plan Supplement, including any and all actions required to be taken under applicable non-bankruptcy Law, in each case, in accordance with the terms, conditions, and consent rights contained in the Restructuring Support Agreement.

C. *The Reorganized Debtors*

On the Effective Date, the New Board shall be established, and each Reorganized Debtor shall adopt its New Organizational Documents, if any. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated by this Plan as necessary to consummate this Plan.

D. *Cancellation of Notes, Instruments, Certificates, and Other Documents*

Except for the purpose of evidencing a right to a distribution under this Plan, on the Effective Date, except as otherwise specifically provided for in this Plan or the Plan Supplement: (1) the obligations of any Debtor under all certificates, shares, notes, bonds, indentures, purchase rights, or other instruments or documents, directly or indirectly evidencing or creating any indebtedness or obligations of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered to the Debtors without any need for a Holder to take further action with respect thereto, except as required under the laws and requirements of each applicable jurisdiction, and the Debtors shall not have any continuing obligations thereunder and Holders of or parties to such cancelled instruments, certificates, and other documentation will have no rights arising from or relating to such instruments, certificates, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, compromised and discharged.

Notwithstanding such cancellation and discharge, the Senior Loan Documents shall continue in effect to the extent necessary (1) to allow the Holders of Senior Loan Claims to receive distributions under this Plan; (2) to allow the Debtors, the Reorganized Debtors, and the Prepetition Agents to make post-Effective Date distributions or take such other action pursuant to this Plan on account of such Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the Holders of such Claims; and (3) to allow the Prepetition Agents to

enforce their rights, claims, and interests vis-à-vis any party other than the Debtors, including any rights with respect to priority of payment and/or to seek reimbursement or indemnification.

On the Effective Date, the Prepetition Agents shall be relieved of all further duties and responsibilities related to the Senior Loan Documents.

E. *Exemption from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the issuance, transfer, or exchange of any debt, security, or other interest in the Debtors or the Reorganized Debtors under this Plan or the Restructuring Transactions shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

F. *Sources of Consideration for Restructuring Transactions*

The Debtors and/or the Reorganized Debtors, as applicable, will fund distributions under this Plan with (i) Cash on hand on the Effective Date; (ii) the New Common Stock; and (iii) the Exit Facility and/or the Cash proceeds thereof, as applicable. Each distribution and issuance referred to in Article VI shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance, distribution, or authorization, as applicable, of certain Securities in connection with this Plan, including the New Common Stock, will be exempt from registration under the Securities Act, as described more fully in Article VI.F hereof.

G. *New Stockholders Agreement*

On and as of the Effective Date, each Holder of New Common Stock shall be deemed to be a party to the New Stockholders Agreement without the need for execution by such Holder. The New Stockholders Agreement shall be binding on all Entities receiving, and all Holders of, the New Common Stock (and their respective successors and assigns), whether such New Common Stock is received or to be received on or after the Effective Date and regardless of whether such Entity executes or delivers a signature page to the New Stockholders Agreement.

H. *Issuance and Distribution of New Common Stock*

On the Effective Date, Reorganized Marelli shall issue the New Common Stock to certain Holders of Allowed Claims and Allowed Interests in accordance with Article III of this Plan. The issuance of New Common Stock under this Plan, including pursuant to the Management Incentive Plan, shall be duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors or the Holders of Claims or Interests, as applicable. All New Common Stock issued under this Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

On the Effective Date, Reorganized Marelli and all Holders of New Common Stock then outstanding shall be deemed to be parties to the New Organizational Documents, substantially in the form contained in the Plan Supplement, without the need for execution by any such Holder. On the Effective Date, the New Organizational Documents shall be binding on the Reorganized Debtors and all parties receiving, and all Holders of, the New Common Stock.

I. *Exit Facility*

On the Effective Date, Reorganized Marelli and/or one or more other Reorganized Debtors shall enter into the Exit Facility, the terms of which shall be set forth in the Exit Facility Documents, which shall be in form and substance reasonably acceptable to the Required Plan Sponsors.

The Confirmation Order shall be deemed final approval of the Exit Facility and the Exit Facility Documents and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the Exit Facility. On the Effective Date, any Liens and security interests to be granted in accordance with the Exit Facility Documents (i) shall be deemed to be granted, (ii) shall be legal, binding, and enforceable Liens on, and security interests in, the applicable collateral in accordance with the respective terms of the Exit Facility Documents, (iii) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit Facility Documents, and (iv) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law. The Reorganized Debtors and the Entities granting such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order (subject solely to the occurrence of the Effective Date) and any such filings, recordings, approvals, and consents shall not be required unless required by the Exit Facility Documents), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. On and as of the Effective Date, the Exit Facility Lenders shall be deemed to be parties to, and bound by, the Exit Facility Documents, without the need for execution thereof by any such Exit Facility Lender. To the extent any Exit Facility Lender is also a DIP Lender, each DIP Lender thereby instructs and directs the Disbursing Agent and the Exit Facility Agent (as applicable), to (a) act as Disbursing Agent to the extent required by this Plan, (b) execute and deliver the Exit Facility Documents (each to the extent it is a party thereto), as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, to which the Exit Facility Agent is a party and to promptly consummate the transactions contemplated thereby, and (c) take any other actions required or contemplated to be taken by the Exit Facility Agent and/or the Disbursing Agent (as applicable) under this Plan or any of the Definitive Documents to which it is a party.

J. *Corporate Existence*

Except as otherwise provided in this Plan, the New Organizational Documents, the Restructuring Transactions Memorandum, or any agreement, instrument, or other document incorporated in this Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by this Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to this Plan and require no further action or approval.

K. *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in this Plan or in any agreement, instrument, or other document incorporated in this Plan or the Plan Supplement, on the Effective Date, pursuant to section 1141 of the Bankruptcy Code and any additional documentation that may be required under the laws and requirements of each applicable jurisdiction, all property in each Debtor's Estate, all Causes of Action, and any property acquired by each of the Debtors under this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances and such other Liens or other encumbrances as may be permitted thereby. On and after the Effective

Date, except as otherwise provided in this Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise, or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

L. *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by this Plan and the Definitive Documents, and all actions as may be required under any law or requirements of any applicable jurisdiction to implement the Restructuring Transactions, shall be deemed authorized and approved by the Bankruptcy Court in all respects without any further corporate or equity holder action, including, as applicable: (1) the implementation of the Restructuring Transactions; (2) the adoption, execution, and filing of the New Organizational Documents; (3) the selection of the directors, managers, and officers for the Reorganized Debtors; (4) the execution and delivery of the Exit Facility Documents and the incurrence of credit thereunder; (5) the adoption of the Management Incentive Plan by the New Board; (6) the issuance, transfer, and/or distribution of the New Common Stock and the execution, delivery, and filing of any documents pertaining thereto, as applicable; (7) the formation of any Entities pursuant to the Restructuring Transactions; (8) the consummation of the Exit Facility, including the execution, delivery, and filing, as applicable of the Exit Facility Documents; (9) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (10) all other actions contemplated under or necessary to implement this Plan and the Restructuring Transactions (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in this Plan and the Definitive Documents involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors, or the other Reorganized Debtors in connection with this Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors. On or before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Facility, the New Organizational Documents, the New Common Stock, the Management Incentive Plan, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.L shall be effective notwithstanding any requirements under non-bankruptcy Law.

M. *New Organizational Documents*

On or before the Effective Date, each of the Reorganized Debtors will file its New Organizational Documents, if applicable, with the applicable Secretaries of State and/or other applicable authorities in its respective jurisdiction of incorporation or formation in accordance with the applicable Laws of the respective jurisdiction of incorporation or formation. The New Organizational Documents shall be consistent with the Restructuring Support Agreement, the Restructuring Term Sheet, and section 1123(a)(6) of the Bankruptcy Code, and shall be in form and substance acceptable to the Debtors or Reorganized Debtors, as applicable, and the Required Plan Sponsors. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents in accordance with the terms thereof and as permitted by the Laws of their respective jurisdictions of incorporation or formation and their respective New Organizational Documents.

N. *Directors and Officers of the Reorganized Debtors*

On the Effective Date, the term of the current board of directors of the Debtors shall expire, and the directors for the initial term of the New Board shall be designated and appointed in accordance with the terms set forth in the New Organizational Documents and the New Stockholders Agreement, and as may be required under the laws and requirements of each applicable jurisdiction; *provided* that the Special Committee shall retain authority following the Effective Date with respect to matters relating to Professional Fee Claims requests by Professionals acting at their authority and direction in accordance with the terms of this Plan. The Special Committee shall not have any of its privileged and confidential documents, communications, or information transferred (or deemed transferred) to

Reorganized Marelli. The initial members of the New Board will be identified in the Plan Supplement, as well as those Persons that will serve as officers of the Reorganized Debtors. Each such member and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents, the New Stockholders Agreement, and other constituent documents of the Reorganized Debtors.

To the extent any identified director or officer is an Insider, the nature of any compensation to be paid to such director or officer will also be disclosed prior to the Effective Date. Provisions regarding the removal, appointment, and replacement of members of the New Board will be disclosed in the New Organizational Documents.

O. *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors, their officers, and the members of the New Board are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and Definitive Documents, including the Securities issued pursuant to this Plan, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents.

P. *Preservation of Causes of Action*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under this Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under this Plan or pursuant to a Bankruptcy Court order, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of the Bankruptcy Court.

Q. *Management Incentive Plan*

Following the Effective Date, the New Board shall be authorized to adopt and implement the Management Incentive Plan, which will provide for the grants of equity and equity-based awards to employees, directors, consultants, and other service providers of the Reorganized Debtors, as determined at the discretion of the New Board

in all respects. The terms and conditions, including with respect to participants, allocation, timing, form, and structure of the equity or equity-based awards shall be determined at the discretion of the New Board.

R. *Employee Obligations and Employee Arrangements*

[Unless otherwise provided herein, and subject to Article V of the Plan, on the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall be deemed to have assumed the Employment Agreements, except for (1) all employee equity or equity based incentive plans, and any provisions set forth in the Employment Agreements that provide for rights to acquire Interests or New Common Stock, which shall not constitute or be deemed to constitute Executory Contracts and shall be deemed terminated on the Effective Date; (2) any agreement or plan whose value is related to Interests or New Common Stock or other ownership interests of the Debtors, in each case, shall not constitute or be deemed to constitute Executory Contracts and shall be deemed terminated on the Effective Date; and (3) Employment Agreements that have been rejected pursuant to an order of the Bankruptcy Court. After the Effective Date, the Debtors or Reorganized Debtors, as applicable shall be permitted to make payments to employees pursuant to employment programs then in effect, and to implement additional employee programs and make payments thereunder, without any further notice to or action, order, or approval of the Bankruptcy Court. Pursuant to section 1129(a)(13) of the Bankruptcy Code, as of the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.][7]

PBGC asserts that if the Pension Plan terminates under 29 U.S.C. §§ 1341(c) or 1342, the Debtors will each be jointly and severally liable to PBGC for each of the following Claims: (1) any unpaid minimum funding contributions owed to the Pension Plan under 29 U.S.C. §§ 1082, 1083, 1362(b) and 26 U.S.C. §§ 412, 430; (2) the Pension Plan's unfunded benefit liabilities under 29 U.S.C. § 1362(b); and (3) pension insurance premiums under 29 U.S.C. §§ 1306 and 1307, including termination premiums at the rate of $1,250 per plan participant per year for three years under 29 U.S.C. § 1306(a)(7).

The Debtors and the Reorganized Debtors reserve all rights and defenses relating to any asserted liability, including but not limited to contesting the validity, priority, and amount of such Claims.

After the Effective Date, the Reorganized Debtors shall (1) satisfy the minimum funding requirements for the Pension Plan under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083; (2) pay all required premiums for the Pension Plan, if any, owed to PBGC under 29 U.S.C. §§ 1306 and 1307; and (3) administer the Pension Plan in accordance with the applicable provisions of ERISA and the Internal Revenue Code, and the Reorganized Debtors reserve all of their rights thereunder.

With respect to the Pension Plan, nothing in the Disclosure Statement, this Plan, the Confirmation Order, or any other document filed in these Chapter 11 Cases, or section 1141 of the Bankruptcy Code shall be construed to discharge, release, limit, or relieve any individual from any Claim by PBGC or the Pension Plan for breach of any fiduciary duty under ERISA with respect to the Pension Plan, including prohibited transactions, subject to any and all applicable rights and defenses of such parties, which are expressly preserved. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duty or related liability by any of the provisions in this Plan, the Confirmation Order, or section 1141 of the Bankruptcy Code, or other document Filed in these Chapter 11 Cases. For the avoidance of doubt, the Reorganized Debtors shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, or any other applicable law relating to the Pension Plan.

S. *Closing the Chapter 11 Cases*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases, except for the Chapter 11 Case of one Debtor entity, and all contested matters relating to each of

---

[7] **Note:** The Debtors and the Required Plan Sponsors continue to diligence, review, and analyze the Debtors' contracts, agreements, and leases. Subject to completion of such efforts, the Debtors may seek to further amend the treatment of such contracts, agreements, and leases in advance of the Disclosure Statement Hearing.

the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of such Debtor entity.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with this Plan, the Reorganized Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of the remaining Debtor entity in accordance with the Bankruptcy Code and the Bankruptcy Rules.

The Debtors expect that the Effective Date will occur on the same date for substantially all Debtors. However, subject to applicable tax considerations and compliance with the Plan, the Plan Supplement, and any applicable Definitive Documents, the Debtors and the Required Plan Sponsors may consent, each in their sole discretion, for conditions precedent to the Effective Date to apply to each Debtor on an individual basis such that the Effective Date for any individual Debtor may occur prior to the Effective Date of any other individual Debtor.

T. *Payment of Fees and Expenses of Certain Creditors*

Following the Confirmation Date, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, the Restructuring Expenses related to this Plan and implementation, Consummation, and defense of the Restructuring Transactions, whether incurred before, on, or after the Effective Date, in accordance with any applicable engagement letter, the DIP Orders, and the Restructuring Support Agreement.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption and Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided in this Plan or otherwise agreed to by the Debtors and the counterparty to an Executory Contract or Unexpired Lease, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected in the Chapter 11 Cases, shall be deemed assumed by the Reorganized Debtors, effective as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; or (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date or which the requested effective date of such rejection is after the Effective Date. Except as otherwise provided in this Plan, the Debtors shall assume, assume and assign, or reject, as the case may be, Executory Contracts and Unexpired Leases set forth in the applicable Schedules in the Plan Supplement.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in this Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order. Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal Law or as otherwise agreed by the Debtors and the applicable counterparty to the Executory Contract or Unexpired Lease.

To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any “change of control” provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease, such requirement shall be satisfied if the Debtors make an election to assume or reject such Executory Contract or Unexpired Lease prior to the deadline set forth by the Bankruptcy Code or the Bankruptcy Rules, as applicable, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

B. *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contract or Unexpired Lease. Without limiting the general nature of the foregoing, and notwithstanding any non-bankruptcy Law to the contrary, the Debtors and Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

C. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Claims, Noticing, and Solicitation Agent at the address specified in any notice of entry of the Confirmation Order and served on the Reorganized Debtors no later than thirty (30) days after the effective date of such rejection.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.H of this Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim against the applicable Debtor that is the counterparty to any such Executory Contract or Unexpired Lease as set forth in Article III.C of this Plan and may be objected to in accordance with the provisions of Article VII of this Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D. *Cure of Defaults for Assumed, or Assumed and Assigned, Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding: (a) the amount of any payments to cure such a default; (b) the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following either (1) the entry of a Final Order or orders resolving the dispute and approving the assumption or (2) the settlement of the dispute between the parties which may be entered into without further order of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions

restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. For the avoidance of doubt, assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not override or otherwise release any indemnification obligations in such Executory Contract or Unexpired Lease. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged as of the Effective Date, without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

E. *Survival of the Debtors' Indemnification Obligations and Insurance Obligations*

Consistent with applicable Law, all indemnification provisions currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the Indemnified Parties shall be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to the Indemnified Parties than the indemnification provisions in place prior to the Effective Date.

None of the Debtors or Reorganized Debtors shall amend and/or restate their respective charters, bylaws, operating agreements, or other organization documents (as applicable) on or after the Petition Date to terminate, reduce, discharge, impair, or adversely affect any of the Debtors' or Reorganized Debtors' obligations referred to in the preceding paragraph. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under this Plan and shall continue as obligations of the Reorganized Debtors.

In addition, after the Effective Date, the Reorganized Debtors will not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date and all other individuals covered by such insurance policies, will be entitled to the full benefits of each such policy for the full term of such policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date.

All Claims arising from or related to any indemnification obligations that are not Reinstated or assumed shall be treated as General Unsecured Claims as set forth in Article III.C of this Plan and may be objected to in accordance with the provisions of Article VII of this Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

F. *Director, Officer, Manager, and Employee Liability Insurance*

The Reorganized Debtors shall purchase and maintain new D&O liability insurance policies for directors, officers, employees, attorneys, or other professionals and agents of the Reorganized Debtors.

G. *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H. *Reservation of Rights*

Nothing contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under this Plan.

I. *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

J. *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest (or such Holder's Affiliate) shall receive the full amount of the distributions that this Plan provides for the Allowed Claims and Allowed Interests in each applicable Class. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of this Plan. Except as otherwise provided in this Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B. *Disbursing Agent*

Distributions under this Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C. *Rights and Powers of Disbursing Agent*

1. Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (1) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (2) make all distributions contemplated hereby; (3) employ professionals to represent it with respect to its responsibilities (as applicable); and (4) exercise such other

powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors. If the Administrative Agent takes any action in furtherance of disbursements, including any distribution of New Common Stock, all reasonable and documented fees and out-of-pocket expenses (including attorney fees and expenses) of the Administrative Agent shall be paid in Cash by the Reorganized Debtors.

D. *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. The Prepetition Agents will recognize only those Holders of Senior Loan Claims and Holders of Emergency Loan Claims listed on the Claims Register as of the Distribution Record Date for purposes of making distributions under this Plan, and may implement trading freezes with respect to such Claims to facilitate the determination of such Holders.

2. Delivery of Distributions

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims or Interests, except as otherwise provided in this Article VI, shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent on the Distribution Date: (1) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors have not received a written notice of a change of address; or (4) to any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf. Subject to this Article VI, distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in this Plan. The Debtors, the Disbursing Agent, or the Reorganized Debtors, as applicable, shall not incur any liability whatsoever on account of any distributions under this Plan except for gross negligence or willful misconduct.

Notwithstanding the foregoing, (1) all distributions on account of DIP Claims will be made to the DIP Agent on the Effective Date, and the DIP Agent will be, and will act as, the Disbursing Agent with respect to the DIP Claims in accordance with the terms and conditions of this Plan and the applicable debt documents; and (2) all distributions on account of Senior Loan Claims and Emergency Loan Claims will be made to the Prepetition Agents on the Distribution Date, and the Prepetition Agents will be, and will act as, the Disbursing Agents with respect to the Senior Loan Claims and the Emergency Loan Claims, as applicable, in accordance with the terms and conditions of this Plan and the applicable debt documents.

3. No Fractional Distributions

No fractional shares of New Common Stock shall be distributed, and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to this Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (1) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (2) fractions of less than one-half (½) shall be rounded to the next lower whole

number with no further payment therefore. The total number of authorized shares of New Common Stock to be distributed pursuant to this Plan shall be adjusted as necessary to account for the foregoing rounding.

4. Minimum Distributions

Holders of Allowed Claims entitled to distributions of $100 (whether Cash or otherwise) or less shall not receive distributions, and each such Claim shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against the Debtors or the Reorganized Debtors, as applicable, or their property.

5. Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

E. *Manner of Payment*

Unless otherwise set forth herein, all distributions of Cash, Exit Facility Loans, and the New Common Stock, as applicable, to the Holders of Allowed Claims under this Plan shall be made by the Disbursing Agent. At the option of the Disbursing Agent, any Cash payment to be made under this Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F. *Registration or Private Placement Exemption*

The offering, issuance, and distribution of any 1145 Securities pursuant to this Plan, including the New Common Stock (other than the New Common Stock issued in respect of the Management Incentive Plan), shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. federal, state or local securities Laws requiring registration prior to the offering, issuance, distribution, or sale of Securities. The 1145 Securities (1) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (2) are freely tradable and transferable without registration under the Securities Act by any initial recipient thereof that (i) is not an "affiliate" of Reorganized Marelli as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within ninety (90) days of such transfer, and (iii) is not an entity that is an "underwriter" (as defined in section 1145(b) of the Bankruptcy Code) with respect to such securities. To the extent that Persons who receive the 1145 Securities as contemplated under this Plan are deemed to be underwriters, resales by such Persons would not be exempted from registration under the Securities Act or other applicable Law by Section 1145 of the Bankruptcy Code. Persons deemed to be underwriters may, however, be permitted to resell the 1145 Securities received pursuant to this Plan without registration pursuant to the provisions of Rule 144 under the Securities Act or another applicable exemption under the Securities Act, subject to applicable state and local securities Laws, including state blue sky Law.

Following the Effective Date, any New Common Stock issued in respect of the Management Incentive Plan, or otherwise not issued pursuant to the exemption from registration provided by section 1145 of the Bankruptcy Code, will be offered, issued, and distributed in reliance upon the exemption from registration provided by Section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other exemptions from registration, and similar Blue-Sky Laws, will be considered "restricted securities," and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom, and subject to applicable state and local securities Law, including state blue sky Law.

Notwithstanding the foregoing, recipients of the New Common Stock are advised to consult with their own legal advisors as to the availability of any exemptions from registration under the Securities Act and any applicable state and local securities Laws, including state blue sky Law. The New Common Stock will also be subject to any restrictions imposed on it by the New Organizational Documents.

G. *Tax Issues and Compliance with Tax Requirements*

In connection with this Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors and the Disbursing Agent reserve the right to allocate all distributions made under this Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

H. *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

I. *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, this Plan, or the Confirmation Order, or required by applicable bankruptcy Law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim; *provided* that interest shall accrue on the DIP Claims in accordance with the terms of the DIP Credit Agreements and the DIP Orders until paid in full in Cash or otherwise satisfied with the consent of the Holders of DIP Claims, as applicable.

J. *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than United States dollars shall be automatically deemed converted to the equivalent United States dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

K. *Setoffs and Recoupment*

Other than with respect to the DIP Claims and the Senior Loan Claims, the Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to this Plan in respect of any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or their successors of any such Claim it may have against the Holder of such Claim.

In no event shall any Holder of a Claim be entitled to recoup against such Claim any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice of such recoupment in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

L. *Claims Paid or Payable by Third Parties*

1. Claims Paid by Third Parties

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor, such Claim shall be Disallowed without an objection having to be Filed and without any further notice to, or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is repaid.

2. Claims Payable by Third Parties

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to, or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Notwithstanding anything herein to the contrary, nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

M. *Indefeasible Distributions*

Any and all distributions made under this Plan shall be indefeasible and not subject to clawback.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Disputed Claims Process*

The Debtors, with the consent of the Required Plan Sponsors, and Reorganized Debtors shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. **Except as otherwise provided herein, all Proofs of Claim Filed after the Claims Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, as applicable, without the need for any objection by the Debtors or Reorganized Debtors, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.**

B. *Allowance of Claims or Interests*

After the Effective Date and subject to the terms of this Plan, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy Law. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim unless and until such Claim or Interest is (i) deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest; (ii) Allowed pursuant to any stipulation with the Debtors or Reorganized Debtors, as applicable; or (iii) Allowed by the Debtors or Reorganized Debtors, as applicable, after review of and determination not to object to such Claim or Interest.

C. *Claims Administration Responsibilities*

Except as otherwise specifically provided in this Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall have the sole authority to (1) File and prosecute objections to Claims; (2) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (3) settle, compromise, or resolve any Disputed Claim, and deem any such settled, compromised, or resolved Disputed Claim satisfied, without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) administer and adjust, or direct the Claims, Noticing, and Solicitation Agent to adjust, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in this Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.P of this Plan.

D. *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in this Plan, a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors or Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.

E. *Adjustment to Claims Without Objection*

Any Claim that has been paid, satisfied, or any settled, compromised, or resolved Disputed Claim deemed satisfied by the Debtors or Reorganized Debtors, as applicable, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors, as applicable, or by the Claims, Noticing, and Solicitation Agent as directed by the Debtors or Reorganized Debtors without having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

F. *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

G. *Disallowance of Claims or Interests*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be Disallowed if: (1) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

H. *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under this Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtors or the Bankruptcy Court.

I. *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy Law or as otherwise provided herein.

J. *No Interest*

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have, or any distribution to be made on account of such Allowed Claim or Allowed Interest that have been effectuated through a Rule 9019 Order, or otherwise expressly identified as a settlement as may be set forth herein. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of this Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle any Claims and Causes of Action against other Entities.

B. *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted this Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. Unless expressly provided in this Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to occurrence of the Effective Date.

C. *Term of Injunctions or Stays*

Unless otherwise provided in this Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

D. ***Release of Liens***

**Except as otherwise specifically provided in this Plan, the Confirmation Order, the Exit Facility Documents, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable. The DIP Agent and the Prepetition Agents shall, at the Reorganized Debtors' sole cost and expense, execute and deliver all documents reasonably requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests on such assets of the Debtors that are subject to the Restructuring.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then such Holder (or the agent for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and take any and all steps requested by the Debtors or the Reorganized Debtors, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the execution and delivery of such releases and the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings, at the Reorganized Debtors' sole cost and expense, on such**

**Holder's behalf. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. Notwithstanding the foregoing paragraph, this Article VIII.D shall not apply to any Secured Claims that are Reinstated pursuant to the terms of this Plan.**

E. ***Debtor Release***[8]

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy and sufficiency of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case to the maximum extent permitted by Law, from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, including any derivative claims asserted or assertable on behalf of any of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of any Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part: (i) the Debtors (including the management, ownership, or operation thereof), the business or contractual arrangement between the Debtors and any Released Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement; (ii) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, the Disclosure Statement, this Plan (including the Plan Supplement), the Definitive Documents, the DIP Facilities, the DIP Documents, the Exit Facility Documents, or the negotiation, preparation, formulation or implementation of the foregoing; (iii) the Chapter 11 Cases, the Disclosure Statement, this Plan, the filing of the Chapter 11 Cases, the negotiation of and entry into the OEM Accommodation Agreements, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement; or (iv) any other act or omission, transaction, agreement, event, or other occurrence, in each case relating to any of the foregoing, taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to the Retained Causes of Action List to be attached as an exhibit to the Plan Supplement, or (iii) Claims or Causes of Action arising from any act or omission determined by a Final Order to have constituted actual fraud.**

F. ***Release by Holders of Claims or Interests***[9]

**Except as otherwise specifically provided in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy and sufficiency of which is hereby confirmed, each Released Party is deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each Releasing Party to the maximum extent permitted by Law from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, including any derivative Claims asserted or assertable on behalf of any of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or**

8 The releases set forth herein remain subject to the Independent Investigation.

9 The releases set forth herein remain subject to the Independent Investigation.

**collectively) or on behalf of any Holder of any Claim or Interest, or that such Releasing Party could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part: (i) the Debtors (including the management, ownership, or operation thereof), the business or contractual arrangement between the Debtors and any Released Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement; (ii) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, the Disclosure Statement, this Plan (including the Plan Supplement), the Definitive Documents, the DIP Facilities, the DIP Documents, the Exit Facility Documents, or the negotiation, preparation, formulation or implementation of the foregoing; (iii) the Chapter 11 Cases, the Disclosure Statement, this Plan, the filing of the Chapter 11 Cases, the negotiation of and entry into the OEM Accommodation Agreements, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement; or (iv) any other act or omission, transaction, agreement, event, or other occurrence, in each case relating to any of the foregoing, taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any commercial Claims arising between two non-Debtor parties in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, (ii) any post-Effective Date obligations of any party or Entity under this Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (iii) any Causes of Action specifically retained by the Debtors pursuant to the Retained Causes of Action List to be attached as an exhibit to the Plan Supplement, or (iv) Claims or Causes of Action arising from any act or omission determined by a Final Order to have constituted actual fraud.**

G. ***Exculpation***

**Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement, and related prepetition transactions, the Disclosure Statement, this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Exculpated Party on this Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, this Plan, the Independent Investigation, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and, upon completion of this Plan, shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

H. ***Injunction***

**Except as otherwise expressly provided in this Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Causes of Action, or Interests that have been discharged or released pursuant to this Plan, or are subject to exculpation pursuant to this Plan, are conclusively, absolutely, unconditionally,**

**irrevocably, and forever enjoined, from and after the Effective Date, to the maximum extent permitted by Law, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Causes of Action, or Interest; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Causes of Action, or Interest; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Causes of Action, or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Causes of Action, or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim, Cause of Action, or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Causes of Action, or Interest released or settled pursuant to this Plan.**

I. *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Article VI of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

J. *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of Allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

K. *Subordination Rights*

Except as expressly set forth in this Plan, any distributions under this Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under this Plan, in each case other than as provided in this Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

A. *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of this Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.B hereof):

1. the Restructuring Support Agreement shall have not been terminated as to all parties thereto and shall remain in full force and effect (and no event shall have occurred that purports to terminate the Restructuring Support Agreement as to all parties thereto (even if such termination does not occur as a result of the automatic stay of section 362 of the Bankruptcy Code or otherwise));

2. the Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect;

3. the Debtors shall have otherwise substantially consummated the Restructuring Transactions, including all transactions contemplated by the Restructuring Term Sheet, in a manner consistent with the Restructuring Support Agreement and this Plan;

4. the Definitive Documents shall (i) be consistent in all material respects with the consent rights, terms, and conditions set forth in the Restructuring Support Agreement and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights set forth therein and (ii) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable parties;

5. all actions, documents, and agreements constituting the applicable Definitive Documents, including any exhibits, schedules, amendments, modifications, or supplements thereto, shall have been executed and/or effectuated, and shall be in form and substance materially consistent with and subject to the consent rights set forth in the Restructuring Support Agreement, and shall be mutually agreed to by the Debtors and the Required Plan Sponsors, and only to the extent the rights of the Holders of General Unsecured Claims are affected, in consultation with the advisors to the Committee;

6. (i) any and all requisite governmental, regulatory, and third-party approvals and consents shall have been obtained or waived, not be subject to unfulfilled conditions, and be in full force and effect, and (ii) all applicable waiting periods shall have expired or terminated, in each case under each clause of (i) and (ii) above, without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Restructuring Transactions, or the financial benefits of such Restructuring Transactions to the Plan Sponsors;

7. all professional fees and expenses of retained Professionals required to be approved by the Bankruptcy Court shall have been paid in full in Cash or amounts sufficient to pay such fees and expenses in full after the Effective Date have been placed in the Professional Fee Escrow Account;

8. all accrued and unpaid (i) Restructuring Expenses and (ii) fees and expenses of the Consenting Stakeholders, the DIP Lenders, the Initial Tranche A Lender, and the DIP Agent shall have been paid in full and in Cash in accordance with the Restructuring Support Agreement, the DIP Orders, and the DIP Documents;

9. the New Common Stock shall have been issued by Reorganized Marelli;

10. the Exit Facility Documents shall have been duly executed and delivered by all of the Entities that are party thereto and all conditions precedent to the effectiveness of the Exit Facility shall have been satisfied or duly waived in writing in accordance with the terms of the Exit Facility Documents and the closing of the Exit Facility shall have occurred;

11. the OEM Accommodation Agreements, in the form and substance acceptable to the Debtors and the Required Plan Sponsors, shall have been approved by the Bankruptcy Court, either by a separate Final Order(s) or as part of the Confirmation Order; and

12. the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal.

B. *Waiver of Conditions*

The conditions to the Effective Date of this Plan with respect to any Debtor set forth in this Article IX may only be waived, in whole or in part, in writing (which may be via electronic mail) with the consent of the Debtors and the Required Plan Sponsors, *provided that*, with respect to the fourth and eighth conditions, the consent of any Consenting Stakeholders who have consent rights set forth in the Restructuring Support Agreement over the applicable Definitive Document shall also be required. Any such waiver shall be effective without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan. Subject to the terms contained herein, this Plan may become effective as to any one or more Debtors without becoming effective as to all Debtors.

C. *Substantial Consummation*

"Substantial Consummation" of this Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date. For the avoidance of doubt, the nonoccurrence of the Effective Date with respect to one or more Debtors in accordance with this Plan shall not, by itself, prevent or delay a finding that this Plan has been substantially consummated with respect to all other Debtors.

D. *Effect of Nonoccurrence of Conditions to the Effective Date*

If the Effective Date does not occur with respect to any Debtor, this Plan shall be null and void in all respects with respect to that Debtor and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of a Claim or Interest, or any other Entity in any respect; *provided* that all provisions of the Restructuring Support Agreement that survive termination thereof shall remain in effect in accordance with the terms thereof.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

A. *Modification and Amendments*

Subject to the limitations contained in this Plan and the consent rights of the Consenting Stakeholders, the Required Plan Sponsors, and the DIP Lenders as set forth in this Plan and the Restructuring Support Agreement, the Debtors reserve the right to modify this Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided, however*, that the Debtors shall consult the Committee on any alterations, amendments, or modifications to the Plan and the Definitive Documents that impact the treatment of Holders of General Unsecured Claims under the Plan and provide the Committee with advanced notice of the Filing of any document with respect to the foregoing. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, those restrictions on modifications set forth in this Plan, and the consent rights of the Consenting Stakeholders, the Required Plan Sponsors, and the DIP Lenders as set forth in this Plan and the Restructuring Support Agreement, the Debtors expressly reserve their rights to alter, amend, or modify materially this Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

The Committee reserves the right to seek to adjourn its objection deadline and the Confirmation Hearing in the event that the Debtors file material modifications to the Plan including alterations, amendments, supplements, or modifications to the Plan impacting the treatment of Holders of General Unsecured Claims under the Plan.

B. *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications or amendments to this Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to this Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C. *Revocation or Withdrawal of this Plan*

Subject to the terms of the Restructuring Support Agreement, the Debtors reserve the right to revoke or withdraw this Plan before the Confirmation Date. If the Debtors revoke or withdraw this Plan, or if Confirmation and Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, any Holders of a Claim or Interest or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases and this Plan, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3. resolve any matters related to: (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to Causes of Action;

7. adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan or the Disclosure Statement;

9. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

11. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.L.1 VI.L.1 hereof;

14. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15. determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16. adjudicate any and all disputes arising from or relating to distributions under this Plan or any transactions contemplated therein;

17. consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20. hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in this Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

21. enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

22. hear any other matter not inconsistent with the Bankruptcy Code; and

23. enter an order closing the Chapter 11 Cases.

Notwithstanding the foregoing, (1) any dispute arising under or in connection with the New Organizational Documents shall be dealt with in accordance with the provisions of the applicable document and (2) if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter

arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI of this Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtors or Reorganized Debtors, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests have accepted or are deemed to have accepted or rejected this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan, each Entity acquiring property under this Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim or debt has voted on this Plan.

B. *Additional Documents*

On or before the Effective Date, and subject to the terms of the Restructuring Support Agreement, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of this Plan. The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims and Interests receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

C. *Dissolution of the Committee and Any other Statutory Committee*

On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases; *provided, however*, that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation of Professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code, and (b) any appeals of the Confirmation Order or other appeals to which the Committee is a party. Except as to the matters covered by the foregoing proviso, the Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee and any other statutory committee after the Effective Date. Any reasonable and documented fees or expenses of the Committee or its advisors incurred between the Confirmation Date and the Effective Date (or after the Effective Date with respect to any appeals of the Confirmation Order or any other matters covered by the foregoing proviso to which the Committee is a party) shall be paid by the Debtors or Reorganized Debtors, as applicable, without any requirement to File a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval.

D. *Reservation of Rights*

Before the Effective Date, neither this Plan, any statement or provision contained in this Plan, nor any action taken or not taken by any Debtor with respect to this Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to any Claims or Interests.

E. *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in this Plan or the Confirmation Order shall be binding on, and shall inure to, the benefit of any heir, executor, administrator, successor, assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of such Entity.

F. *Service of Documents*

All notices, requests, and demands to be effective shall be in writing (including by facsimile transmission and electronic mails) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1. **If to the Debtors:**

**Marelli Holdings Co., Ltd.**
2-19-4 Miyahara-cho
Kita-ku, Saitama City, Saitama 331-0812
Japan
Attention: John Nicholson; Frederick A. "Fritz" Henderson
E-mail address: john.nicholson@marelli.com, fritz.henderson@marelli.com

with copies to:

**Kirkland & Ellis LLP**
**Kirkland & Ellis International LLP**
601 Lexington Avenue
New York, New York 10022
Attention: Joshua A. Sussberg, P.C.; Nicholas Adzima; Evan Swager
E-mail addresses: joshua.sussberg@kirkland.com; nicholas.adzima@kirkland.com; evan.swager@kirkland.com

-and-

**Kirkland & Ellis LLP**
**Kirkland & Ellis International LLP**
333 W Wolf Point Plaza
Chicago, Illinois 60654
Attention: Ross Kwasteniet, P.C.; Spencer Winters, P.C.
E-mail addresses: ross.kwasteniet@kirkland.com; spencer.winters@kirkland.com

2. **If to the Consenting Equity Sponsor:**

**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas
New York, NY 10019
Attention: Brian Hermann; Jacob Adlerstein
E-mail addresses: bhermann@paulweiss.com; jadlerstein@paulweiss.com

3. **If to the DIP Agent:**

**GLAS USA LLC**
3 Second Street, Suite 203
Jersey City, NJ 07311

E-mail addresses: TMGUS@glas.agency; Clientservices.americas@glas.agency

4. **If to the Initial Tranche A Lender:**

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Attention: Joseph Minias; Weston Eguchi; Christine Thain
E-mail addresses: jminias@willkie.com; weguchi@willkie.com; cthain@willkie.com

-and-

Willkie Farr & Gallagher LLP
600 Travis Street
Houston, Texas 77002
Attention: Jennifer Hardy
E-mail address: jhardy2@willkie.com

5. **If to the Ad Hoc Group of Senior Lenders:**

**Akin Gump Strauss Hauer & Feld LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 2006-1037
Attention: Scott Alberino; Kate Doorley; Alex Antypas
E-mail address: salberino@akingump.com; kdoorley@akingump.com; aantypas@akingump.com

-and-

**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
Attention: Ira S. Dizengoff; Anna Kordas
E-mail address: idizengoff@akingump.com; akordas@akingump.com

6. **If to the Consenting Senior Bank Lenders and/or the Consenting Emergency Lenders:**

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, New York 10017
Attention: Timothy Graulich; Richard J. Steinberg
E-mail addresses: timothy.graulich@davispolk.com; richard.steinberg@davispolk.com

-and-

**Nagashima Ohno & Tsunematsu**
JP Tower, 2-7-2 Marunouchi Chiyoda-ku
Tokyo 100-7036, Japan
Attention: Tomohiro Okawa

7. **If to the Official Committee of Unsecured Creditors:**

**Paul Hastings LLP**
200 Park Avenue

New York, New York 10166
Attention: Kristopher M. Hansen; Gabriel E. Sasson;
Daniel Ginsberg
Email addresses: krishansen@paulhastings.com; gabesasson@paulhastings.com;
danielginsberg@paulhastings.com

-and-

**Morris James LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801.
Attention.: Eric J. Monzo; Jason S. Levin; Siena B. Cerra
Email addresses: emonzo@morrisjames.com; jlevin@morrisjames.com;
scerra@morrisjames.com

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G. *Entire Agreement*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

H. *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from https://www.veritaglobal.net/Marelli or the Bankruptcy Court's website at https://www.deb.uscourts.gov/. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of this Plan that does not constitute the Plan Supplement, such part of this Plan that does not constitute the Plan Supplement shall control. The documents contained in the Plan Supplement are an integral part of this Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

I. *Nonseverability of Plan Provisions*

If, before Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the consent of the Required Ad Hoc Group Lenders, the Required DIP Lenders, the Required Plan Sponsors, and the Debtors' or Reorganized Debtors', as applicable; and (3) nonseverable and mutually dependent.

J. *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code, and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under this Plan and any previous plan, and, therefore, neither any of such parties or individuals nor the Reorganized Debtors nor Reorganized Marelli, as applicable, will have any liability for the violation of any applicable Law (including the Securities Act), rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

K. *Closing of Chapter 11 Cases*

Promptly after the full administration of the Chapter 11 Cases, the Reorganized Debtors shall File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

L. *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

[*Remainder of page intentionally left blank.*]

Respectfully submitted, as of the date first set forth above,

Dated: August 3, 2026

MARELLI AUTOMOTIVE LIGHTING USA LLC
on behalf of itself and each of its Debtor Affiliates

*/s/ John Nicholson*

Name: John Nicholson
Title: General Counsel